[No. B201466. Second Dist., Div. One. Feb. 28, 2008.]

JAKKS PACIFIC, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THQ INC., Real Party in Interest.

598

**COUNSEL**

Skadden, Arps, Slate, Meagher & Flom, James E. Lyons and Robert J. Herrington for Petitioner.

No appearance for Respondent.

Irell & Manella, Steven A. Marenberg and Charles E. Elder for Real Party in Interest.

**OPINION**

**VOGEL, J.**—In a contractual arbitration, a neutral arbitrator must disclose "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be

impartial." (Code Civ. Proc., § 1281.9, subd. (a).)[1] In this writ proceeding arising out of a petition to compel the appointment of a neutral arbitrator, the issue is whether the required disclosure must be made (1) at the time the trial court proposes five individuals for the parties' consideration, or (2) when the arbitrator is notified in writing that he has been selected by the parties or appointed by the court. As did the trial court, we conclude that disclosure is not required until the arbitrator is actually selected by the parties or appointed by the court *and* notified as required by section 1281.9, subdivision (b).

## FACTS

Jakks Pacific, Inc., and THQ Inc., are members of a limited liability company that manufactures and sells video games under the terms of an agreement obligating THQ to pay Jakks a percentage of net sales to be renegotiated from time to time. Jakks and THQ, finding themselves unable to agree on the calculation for the current three-year period, were bound by an arbitration clause that required each of them to select an unaffiliated individual with experience in the electronic game industry, after which the selected individuals were supposed to confer and select a third similarly qualified neutral arbitrator to preside over the arbitration.

When it became apparent that the agreed procedure wasn't working, THQ filed a petition to compel arbitration and for the appointment of an arbitrator. (§ 1281.6.)[2] Jakks responded, agreeing that arbitration was required and that the court should appoint the arbitrator. THQ proposed four individuals for the court's consideration, and Jakks proposed five individuals. On June 25, 2007, the trial court nominated five candidates from those proposed by the parties, four from THQ's list and one from Jakks's list.

On July 16, Jakks gave notice that "the five nominees [were] obligated to provide the disclosures" required by section 1281.9, subdivision (b), by July 16 "so the parties [could] agree on an arbitrator, or, if the parties [were] unable to agree, the Court [could] make an informed decision regarding the appointment of the arbitrator." Jakks's nominee's disclosures were attached to Jakks's notice—but there were no disclosures by the other nominees (who

---

[1] All section references are to the Code of Civil Procedure.

[2] Section 1281.6 provides that when the parties to an arbitration agreement are unable to select the arbitrator, the court shall, on petition of a party to the agreement, appoint the arbitrator. When the court agrees that an arbitrator should be appointed, it nominates five persons suggested by the parties or others, after which the parties have another opportunity to select their arbitrator from among the court's nominees or from some other source; if they are again unable to agree, the court appoints the arbitrator from its list of nominees.

had not even been notified that they were on the court's list). THQ objected to Jakks's notice on the ground that disclosure is required at the time of the arbitrator's selection or appointment, not earlier (§ 1281.9, subd. (b)), but Jakks nevertheless filed a "notice of disqualification" of the other nominees on the ground that they had not made the required disclosures. (§ 1281.91, subd. (a).)

After extensive briefing, the trial court struck Jakks's notice of disqualification, finding that disclosure is required when the arbitrator is appointed, not earlier, and appointed one of THQ's nominees (Eric Goldberg) as the arbitrator and ordered him to comply with the disclosure requirements. Jakks then sought our intervention by way of a petition for a writ of mandate, and we issued an order to show cause.[3]

## DISCUSSION

Parties to an arbitration agreement may select the method by which the arbitrator is appointed, but if they fail to do so "the court, on petition of a party to the arbitration agreement, shall appoint the arbitrator." (§ 1281.6.) When the court agrees that an arbitrator should be appointed, it must "nominate five persons from lists of persons supplied jointly by the parties to the arbitration or obtained from a governmental agency concerned with arbitration or private disinterested association concerned with arbitration. The parties to the agreement who seek arbitration and against whom arbitration is sought may within five days of receipt of notice of the nominees from the court jointly select the arbitrator whether or not the arbitrator is among the nominees. If the parties fail to select an arbitrator within the five-day period, the court shall appoint the arbitrator from the nominees." (*Ibid.*)

Regardless of the manner in which the arbitrator is selected, he is required by section 1281.9 to make certain disclosures. "(a) In any arbitration pursuant to an arbitration agreement, *when a person is to serve as a neutral arbitrator,* the proposed neutral arbitrator shall disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial . . . . [¶] . . . (b) Subject only

---

[3] Both parties notified Mr. Goldberg of his appointment, and he timely submitted his disclosures. Thereafter, and notwithstanding the fact that we had stayed further proceedings in the trial court, Jakks filed a protective peremptory challenge (§ 1281.91, subd. (b)(2)) to indicate his intent to disqualify Mr. Goldberg.

to the disclosure requirements of law, *the proposed neutral arbitrator* shall disclose all matters required to be disclosed pursuant to this section to all parties in writing within 10 calendar days of *service of notice of the proposed nomination or appointment*." (§ 1281.9, subds. (a), (b), italics added.)[4]

The trial court found that section 1281.9 means what it says—that the disclosure obligation is triggered "when a person is to serve as a neutral arbitrator" (§ 1281.9, subd. (a)) and must be satisfied "within 10 calendar days of service of notice of the proposed nomination or appointment" (§ 1281.9, subd. (b)). Jakks challenges this interpretation, contending disclosure is required at the time the court "nominate[s] five persons" at the beginning of the process. For the reasons explained below, Jakks is wrong.

## A.

Several similar terms are used throughout the arbitration statutes, and some of the same words are used to mean different things. In context, the statutes nevertheless make sense.

■ These are the rules for *selecting an arbitrator.* When the parties to an arbitration agreement cannot agree on an arbitrator, section 1281.6 provides that the court, "on petition of a party to the arbitration agreement, shall *appoint the arbitrator.*" (Italics added.) When the court determines the petition should be granted, it must "*nominate* five persons" from lists supplied by the parties or others, after which the parties may jointly select one of the "*nominees*" or someone else or, if they fail to agree, the court must "*appoint the arbitrator from the nominees.*" (§ 1281.6, italics added.)

■ These are the rules triggering a neutral *arbitrator's disclosure obligations.* "[W]hen a person *is to serve* as a neutral arbitrator, the *proposed* neutral arbitrator shall disclose all matters that" are required to be disclosed (§ 1281.9, subd. (a), italics added), and he must do so "in writing within 10

---

[4] Although subdivision (b) of section 1281.9 is not a model of clarity, it plainly contemplates notice of the appointment to the arbitrator and the parties. Because the arbitrator's failure to comply with his disclosure obligations results in his disqualification, no other construction makes sense. (§ 1281.91, subd. (a) ["A proposed neutral arbitrator shall be disqualified if he or she fails to comply with Section 1281.9 and any party entitled to receive the disclosure serves a notice of disqualification within 15 calendar days after the proposed nominee or appointee fails to comply with Section 1281.9."]; and see Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2007) ¶ 7:89, p. 7-26 [describing the information that "must be disclosed to all parties within 10 calendar days after service on the proposed neutral of notice of his or her nomination or appointment" (italics omitted)].)

calendar days of service of notice of the proposed *nomination or appointment*" (§ 1281.9, subd. (b), italics added).

■ These are the rules governing *disqualification.* A "*proposed* neutral arbitrator" is disqualified if he fails to timely make the required disclosures. (§ 1281.91, subd. (a), italics added.) If the "*proposed* neutral arbitrator" timely makes the required disclosures, he is subject to a peremptory challenge by each party (§ 1281.91, subd. (b)(1), (2)), and to disqualification for cause (§ 1281.91, subds. (c), (d)).

■ Read together, it is clear that the court's duty to "nominate" five persons to be considered by the parties (§ 1281.6) obligates the court to *propose* five individuals, not select or appoint any one of them as the actual arbitrator. If the parties remain deadlocked, the court must then "*appoint* the arbitrator from the nominees." (*Ibid.,* italics added.) From the arbitrator's perspective, his disclosure obligations are not triggered until (1) a determination is made that he "is to serve as a neutral arbitrator" (§ 1281.9, subd. (a)) *and* (2) he has received written notice of his "*proposed nomination* [*by the parties*] *or appointment* [*by the court*]" (§ 1281.9, subd. (b), italics added).[5] Quite plainly, the trial court's proposal (nomination) of *possible* arbitrators is done without notice to the candidates and before any one of them is selected (nominated) by the parties or appointed by the court. The fact that "nominate" is used one way in section 1281.6 and another in section 1281.9 does not change the plain meaning of the two statutes. (See Black's Law Dict. (6th ed. 1990) p. 1049, col. 2 [to "nominate" is to "name, designate by name, appoint, or propose for election or appointment"]; Webster's 3d New Internat. Dict. (1981) p. 1534 ["nominate" means the act of submitting a name, or the act of appointing, or the state of being nominated]; *Consumer Advocacy Group, Inc. v. Exxon Mobil Corp.* (2002) 104 Cal.App.4th 438, 444 [128 Cal.Rptr.2d 454].)

---

[5] Our bracketed additions to subdivision (b) of section 1281.9 explain the reason for the use of "nomination" and "appointment" with regard to notice—because notice is required (1) when, without the assistance of the court, the parties (having no power of appointment) "nominate" the arbitrator and (2) when, in response to a party's petition, the court selects the arbitrator by way of an "appointment." (See Ethics Stds. for Neutral Arbitrators in Contractual Arb., Stds. 1, 7 [a neutral arbitrator "selected" by the parties or "appointed" by the court must comply with his disclosure obligations within 10 calendar days of service of notice of "the proposed nomination or appointment"].) In this context, "nomination" means "selection." (*Anderson v. City of Los Angeles* (1973) 30 Cal.App.3d 219, 224 [106 Cal.Rptr. 299] [there is no rule of interpretive law that requires the same meaning be given to the same word when used in different places in the same statute; when "the occasion demands it, the same word may have different meanings to effectuate the intention of the act in which the word appears"].)

## B.

The legislative history of the current version of section 1281.9 supports our interpretation. The "*is to serve*" phrase in subdivision (b) was added in 1997, as part of a bill adopted to "revise the disclosure laws for persons *selected* to serve as a neutral arbitrator." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1093 (1997–1998 Reg. Sess.) July 23, 1997, p. 1, italics added.) As explained by the committee, the amendment retained the "mandate for *the appointed neutral arbitrator* specifically to disclose any information which might cause his or her impartiality to be questioned . . . ." (*Id.* at p. 4, italics added.)[6] It follows that the disclosure obligations are triggered "when a person is to serve as a neutral arbitrator" and the required notice is given (§ 1281.9, subds. (a), (b)), and not until then. (*Santa Clara Valley Transportation Authority v. Public Utilities Com.* (2004) 124 Cal.App.4th 346, 360 [21 Cal.Rptr.3d 270]; *People v. Trevino* (2001) 26 Cal.4th 237, 240–241 [109 Cal.Rptr.2d 567, 27 P.3d 283]; *Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196]; *Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57]; see also 6 Witkin, Cal. Procedure (2007 supp.) Proceedings Without Trial, § 511, p. 294 [§ 1281.9, subd. (a), as amended in 1997, requires disclosure "when a person is to serve as a neutral arbitrator"].)

## C.

■ To avoid these conclusions, Jakks treats the proposed arbitrators as the agents of the party who suggested their names to the court and contends it is the parties' duty to obtain disclosures from their agents at the time their names appear on the court's list of five candidates. There are at least two major problems with this argument. First, it is entirely inconsistent with the terms of Jakks and THQ's agreement to arbitrate, which requires an "unaffiliated" *neutral* arbitrator, not a party arbitrator. Second, it is entirely inconsistent with the requirements of the disclosure statute—which applies to

---

[6] As originally enacted in 1994, section 1281.9, subdivision (a), provided: "[W]hen a person is proposed for nomination by all parties or all party arbitrators to serve as a neutral arbitrator, or is proposed for appointment by the court to serve as a neutral arbitrator in response to any petition brought pursuant to Section 1281.6, the proposed nominee or appointee shall disclose, within 10 days of service of notice of the proposed nomination or appointment" all the information required to be disclosed. (Stats. 1994, ch. 1202, § 1, p. 7420.) As explained at page 3 of the committee analysis cited in the text, the 1997 amendments were necessary because there was " 'great confusion in the field regarding [arbitrator] reporting requirements because of the conflicting laws enacted in 1994,' and that there [was] a need to consolidate the laws requiring specified disclosures from *selected or appointed* neutral arbitrators to avoid confusion." (Italics added.)

neutral arbitrators, not party arbitrators. (§ 1281.9, subd. (a) ["In any arbitration pursuant to an arbitration agreement, when a person is to serve as a neutral arbitrator, the proposed neutral arbitrator" shall comply with the listed disclosure obligations].)

■ Neutral arbitrators are governed by Ethics Standards for Neutral Arbitrators in Contractual Arbitration (Standards) adopted in 2002 under the authority of section 1281.85 (and now found in the Cal. Rules of Court). The Standards apply only to neutral arbitrators selected by the parties or a dispute resolution services provider, or appointed by the court to serve impartially (Std. 2(a)(1)), and do not apply to party arbitrators (Std. 3(b)(1)). Standard 14 provides that, with limited exceptions, an "arbitrator must not initiate, permit, or consider any ex parte communications or consider other communications made to the arbitrator outside the presence of all of the parties concerning a pending or impending arbitration . . . ." (Std. 14(a).) Although "administrative matters" are among the permitted exceptions to the rule against ex parte communications (Std. 14(b)), the interpretation of section 1281.9 proposed by Jakks contemplates a degree of familiarity between the candidate and his proponent that is antithetical to the goal of the Standards—which is to encourage "broad public confidence in the integrity and fairness of the process." (Std. 1(b).)

There is nothing akin to an agency relationship between a party and the individual it proposes as a neutral arbitrator.

## D.

■ As a practical matter, no other interpretation makes sense. Under our construction, the parties submit the names of proposed arbitrators, which the court reviews and narrows to a list of five candidates. (§ 1281.6.) If the parties are still deadlocked, the court appoints one of the five candidates, whose disclosure obligation is triggered when he is given notice of that appointment. (§ 1281.9, subds. (a), (b).) The parties are then free to seek disqualification as permitted by section 1281.91.

Jakks's proposed interpretation makes much more work for everyone involved without any apparent benefit. If all five candidates are required to comply with their disclosure requirements, four will necessarily have wasted their time—and quite a lot of it, since the disclosure obligations are substantial.[7] Moreover, the statutory timeframe doesn't work under Jakks's interpretation. Section 1281.9, subdivision (b), gives the arbitrator 10 days from the

---

[7] Section 1281.9, subdivision (a), requires disclosure of "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial, including all of the following: [¶] (1) The existence of any ground specified in Section 170.1 for disqualification of a judge. For purposes of paragraph (8)

date of notice to comply with his disclosure obligations, which works just fine if notice is given after the arbitrator is selected or appointed; conversely, if disclosures are required when the trial court provides its list of five candidates, they would be useless because they would be received too late—as explained above, the parties have only five days within which to reach an agreement and their failure to do so triggers the trial court's duty to appoint one of the candidates. (§ 1281.6.) Jakks concedes as much, but nevertheless contends its scheme "makes sense and improves efficiency because the Superior Court already will have the disclosures when making the appointment and can select a neutral arbitrator free from conflict." Conveniently absent from Jakks's argument is any reference to the fact that section 1281.9, subdivision (b), requires disclosure to "all parties," not to the court, or any suggestion about how it is the court is supposed to know which disclosures would be of concern to the parties.

## E.

In response to our request for further briefing regarding current practices in the alternative dispute resolution community, the parties offered the following information.

---

of subdivision (a) of Section 170.1, the proposed neutral arbitrator shall disclose whether or not he or she has a current arrangement concerning prospective employment or other compensated service as a dispute resolution neutral or is participating in, or, within the last two years, has participated in, discussions regarding such prospective employment or service with a party to the proceeding. [¶] (2) Any matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council pursuant to this chapter. [¶] (3) The names of the parties to all prior or pending noncollective bargaining cases in which the proposed neutral arbitrator served or is serving as a party arbitrator for any party to the arbitration proceeding or for a lawyer for a party and the results of each case arbitrated to conclusion, including the date of the arbitration award, identification of the prevailing party, the names of the parties' attorneys and the amount of monetary damages awarded, if any. In order to preserve confidentiality, it shall be sufficient to give the name of any party who is not a party to the pending arbitration as 'claimant' or 'respondent' if the party is an individual and not a business or corporate entity. [¶] (4) The names of the parties to all prior or pending noncollective bargaining cases involving any party to the arbitration or lawyer for a party for which the proposed neutral arbitrator served or is serving as neutral arbitrator, and the results of each case arbitrated to conclusion, including the date of the arbitration award, identification of the prevailing party, the names of the parties' attorneys and the amount of monetary damages awarded, if any. In order to preserve confidentiality, it shall be sufficient to give the name of any party not a party to the pending arbitration as 'claimant' or 'respondent' if the party is an individual and not a business or corporate entity. [¶] (5) Any attorney-client relationship the proposed neutral arbitrator has or had with any party or lawyer for a party to the arbitration proceeding. [¶] (6) Any professional or significant personal relationship the proposed neutral arbitrator or his or her spouse or minor child living in the household has or has had with any party to the arbitration proceeding or lawyer for a party." (See also Stds. 7-10.)

ADR Services, Inc., provides in rule 11 of its arbitration rules that "[n]otice of the appointment of the neutral arbitrator, whether the appointment has been made by contract, mutually by the parties or by ADR Services, shall be sent to the arbitrator by ADR Services, together with a copy of these rules, and the Agreement to Serve signed by the arbitrator shall be filed with ADR Services prior to the opening of the first hearing. Pursuant to the relevant code sections in force at the time of the appointment of the arbitrator, *any person appointed as a neutral arbitrator shall disclose* to ADR Services any circumstance likely to affect his or her impartiality or independence. Upon receipt of such information from the arbitrator or another source, ADR Services shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others." (<http://www.adrservices.org/rules.php> [as of Feb. 28, 2008], italics added.)

JAMS provides in rule 15(h) of its comprehensive arbitration rules that "[a]ny *disclosures regarding the selected Arbitrator* shall be made as required by law or within ten (10) calendar days from the date of appointment. The obligation of the Arbitrator to make all required disclosures continues throughout the Arbitration process. Such disclosures may be provided in electronic format, provided that JAMS will produce a hard copy to any Party that requests it." (<http://www.jamsadr.com/rules/download.asp> [as of Feb. 28, 2008], italics added.)

Alternative Resolution Centers, LLC (ARC), provides for the selection of the arbitrator in rule 3 of its arbitration rules, then provides in its rule 4 that "[t]he proposed arbitrator shall make disclosures as required by law, including [section] 1281.9 or its successor statute and the Ethics Standards, in writing within 10 days after notice of the proposed appointment." (<http://www.arc4adr.com/rulesforms.html> [as of Feb. 28, 2008].)

For what it's worth, according to their Web sites, all three organizations follow procedures consistent with our interpretation of sections 1281.6 and 1281.9.[8]

## CONCLUSION

■ For the reasons explained above, we hold that the arbitrator's disclosure obligations are not triggered until he is notified that he has been selected by the parties or appointed by the court to serve as a neutral arbitrator. (§ 1281.9.)

---

[8] We reject Jakks's suggestion that there could be two different interpretations of the disclosure statutes, one for arbitrations where the parties are able to agree on the identity of the arbitrator, another for those (such as this case) where they reach an impasse and petition the court for assistance as permitted by section 1281.6. The disclosure requirements plainly apply in both situations, and must be construed with that fundamental fact in mind.

## DISPOSITION

The petition is denied. THQ is entitled to its costs of these writ proceedings.

Mallano, Acting P. J., and Rothschild, J., concurred.