[No. B198440. Second Dist., Div. One. Apr. 25, 2008.]

CASDEN PARK LA BREA RETAIL LLC, Plaintiff and Respondent, v. ROSS DRESS FOR LESS, INC., Defendant and Appellant.

COUNSEL

Bartko, Zankel, Tarrant & Miller, Glenn P. Zwang; Bird Marella Boxer Wolpert Nessim Drooks & Lincenberg and Joel E. Boxer for Defendant and Appellant.

Manatt, Phelps & Phillips, Robert H. Platt, Becky S. Walker and Travis A. Corder for Plaintiff and Respondent.

OPINION

**VOGEL, Acting P. J.**—A commercial landlord and tenant arbitrated a rent dispute before a panel of three real estate brokers, one selected by each party and a neutral arbitrator selected by the two party arbitrators. After the arbitrators rendered an award in favor of the tenant, the landlord petitioned to vacate the award, contending the neutral arbitrator had failed to disclose prior business dealings between the neutral's employer (an international real estate firm) and the tenant and its party arbitrator. The trial court agreed with the landlord and vacated the award, notwithstanding the fact that the neutral arbitrator had no financial or other interest in his employer's dealings. We reverse.

## FACTS[1]

### A.

Since 1982, Ross Dress For Less, Inc., has leased a commercial building from Casden Park La Brea Retail LLC. When the original term of the lease expired, Ross exercised the first of several five-year options to renew at the fair market rental value of the property. The lease provides that in the event the parties are unable to agree on fair market rental value, the dispute is to be resolved by arbitration, with each party selecting an arbitrator and the two party arbitrators selecting a neutral arbitrator (all three arbitrators must be experienced real estate brokers). Fair market rental value is to be determined by a majority vote of the arbitrators or, if two of them do not agree, by averaging the two closest figures and then fixing the rent at the amount selected by the party whose original proposed rent was the closest to the averaged figure.[2]

The parties were unable to agree on the rent for the first five-year term, and in 2005 initiated arbitration proceedings to determine the amount of Ross's

[1] None of these facts are disputed.

[2] As relevant, the lease provides: "Arbitration of Disputes. Landlord and Tenant shall each appoint one arbitrator who shall by profession be a real estate broker who shall have been active over the five . . . year period ending on the date of such appointment in the leasing of commercial retail space in Los Angeles County, California. The determination of the arbitrators shall be limited solely to the determination of the Fair Market Rental Value, taking into account the requirements of this subsection . . . and any written arguments that either or both of the parties may wish to submit as to what the Fair Market Rental Value is. Each such arbitrator shall be appointed within fifteen . . . business days after the Outside Agreement Date [the last date on which the parties could have fixed the rent by agreement]. The two arbitrators so appointed shall within ten . . . business days of the date of the appointment of the last appointed arbitrator agree upon and appoint a third arbitrator who shall be qualified under the same criteria set forth above for qualification of the initial two arbitrators. The three arbitrators shall within thirty . . . business days of the appointment of the third arbitrator reach their determination of Fair Market Rental Value and shall notify Landlord and Tenant of such determination in writing. The decision of the majority of the three arbitrators as to Fair Market Rental Value shall be binding upon Landlord and Tenant, provided, however, that if the three arbitrators are unable to agree on the Fair Market Rental Value, the average of the determinations of the two arbitrators whose determinations are closest to one another shall constitute the Fair Market Rental Value. . . . The fees and costs of the arbitrators, as reasonably determined by them, shall be paid by the party hereto whose Estimated Fair Market Rental Value is least proximate to the Fair Market Rental Value as determined pursuant to the terms and conditions of this Section . . . . As used herein, 'Determined Fair Market Rental Value' means [when the dispute is resolved by arbitration], the Estimated Fair Market Rental Value of Landlord or Tenant which is closest to the determination of Fair Market Rental Value by the arbitrators under this subsection . . . ."

rent for the term beginning February 1, 2006. Ross selected Steven L. Soboroff, Casden selected James Travers, and the two party arbitrators selected Timothy Bower, a broker employed by CB Richard Ellis. In October 2005, Mr. Bower signed a "Neutral Arbitrator Retention and Compensation Agreement" and a separate "Neutral Arbitrator Disclosure" statement. (Code Civ. Proc., § 1281.9, subd. (a).)[3]

Mr. Bower's disclosure states as follows: "I, Tim Bower, as the appointed neutral arbitrator in [this matter] have made the following disclosure to Steve Soboroff and Jim Travers during their telephone interview of me regarding my possible retention as neutral arbitrator: [¶] (a) I am a real estate broker with CB Richard Ellis, a worldwide real estate company. In light of the size of CB Richard Ellis and the parties to this dispute, I would expect that the parties have done business with CB Richard Ellis many times. However, I am not familiar with any pending or prospective transactions involving either of the parties and CB Richard Ellis, except as described below. [¶] (b) I am currently the landlord's representative in leasing a shopping center located at La Brea and Willo[ugh]by in Los Angeles. Ross' real estate representative Mike Seiler and Ross' broker ha[ve] shown an interest in the site. The landlord is considering more than one tenant for the same site and is not exclusively negotiating with Ross Stores. [¶] (c) I have been involved in a deal in the past with Mike Heslov, who is a business associate of Steve Soboroff. [¶] Mr. Soboroff and Mr. Travers asked me, and I told them, that these matters would not affect my impartiality as an arbitrator. At the end of the conversation, both asked me to become the neutral arbitrator notwithstanding the above, and I have agreed to do so."

**B.**

In the arbitration, Casden claimed the fair market rental value was $2.6 million per year, while Ross claimed it was only $1.4 million. At the conclusion of the process, there was no unanimity—Mr. Travers (for Casden) fixed the fair market rental value at $2.2 million, Mr. Soboroff (for Ross) at $1.7 million, and Mr. Bower (the neutral) at $1.675 million. As required by the lease, the arbitrators averaged the two closest figures and arrived at the figure of $1,687,500 per year—which meant that Ross's figure ($1.4 million) was closer than Casden's figure ($2.6 million) and, therefore, that the annual

[3] All section references are to the Code of Civil Procedure.

minimum rent for the five-year term beginning February 1, 2006, is $1.4 million.

C.

After the panel rendered its decision, Casden learned from an Internet search "certain facts" that Mr. Bower had not disclosed before the arbitration. Two petitions were then filed in the trial court, one by Ross to confirm the arbitration award, the other by Casden to vacate it—on the ground that, in his October 2005 disclosure statement, Mr. Bower had failed to disclose (1) that Mr. Soboroff (Ross's party arbitrator) had run for mayor in 2001, (2) that in 2001, Mr. Bower had contributed $100 to Mr. Soboroff's mayoral campaign, (3) that CB Richard Ellis itself and 17 other CB Richard Ellis employees had contributed additional sums to Mr. Soboroff's campaign (a total of $5,050), and (4) that William A. Aiello, a CB Richard Ellis vice-president located in Pennsylvania, represents (or had in the past represented) Ross.

In furtherance of its petition to vacate the award, Casden sought extensive discovery from Ross, Mr. Bower, and several third parties, including CB Richard Ellis, but Ross obtained an order quashing some of Casden's discovery demands and the matter proceeded to a hearing on the dueling petitions to confirm and vacate the arbitration award.[4] By that time, the evidence established (1) that Mr. Bower had contributed $500 to Mr. Soboroff's 2001 campaign, (2) that CB Richard Ellis and 17 of its employees (not including Mr. Bower) had contributed a total of $5,050 to Mr. Soboroff's campaign, (3) that Glenn Anderson, a CB Richard Ellis broker, had represented Ross in four transactions in 2003 and 2004 (one in Wyoming, one in Colorado, and two in Montana) for which CB Richard Ellis earned about $240,000 in commissions, and (4) that in 2001 Stanley Gerlach,

[4] Pursuant to the parties' stipulation, the discovery dispute was heard by a referee appointed by the trial court and denied for these reasons: "On balance, the showing made by Casden—when considered with the disclosures and declaration by Mr. Bower, the public policy supporting efficient arbitration, the public policy supporting disclosure by neutral arbitrators, the applicable statutes, constitutional due process rights, and constitutional privacy rights—does not support the Discovery. The modest political contributions which took place approximately five years prior to the arbitration do not support the Discovery. [Citations.] Similarly, Casden's showing, combined with Mr. Bower's disclosures and declaration, do not show a question of fact as to whether neutral arbitrator Mr. Bower had any substantial economic relationship with Ross or its party arbitrator Mr. Soboroff that would support the Discovery. [Citations.] The declaration obtained by Casden from [CB Richard Ellis] confirms that Mr. Bower had never been involved in a transaction with Ross or its party arbitrator and, therefore, no economic relationship exists between either of them and Mr. Bower. . . ."

another CB Richard Ellis broker, had represented a real estate development (Playa Vista Plaza, Ltd.) controlled by Mr. Soboroff, for which CB Richard Ellis had earned a commission of about $5,000.[5] Casden's discovery confirmed that Mr. Bower had never been involved in a transaction involving Ross or Mr. Soboroff and that, in the transactions Ross had been involved in with CB Richard Ellis brokers other than Mr. Bower, the commissions had not been paid by Ross.

In addition, Ross's evidence (in the form of a declaration from Mr. Bower) established that, before he was selected by Mr. Soboroff and Mr. Travers to serve as the neutral arbitrator, he "had a lengthy conversation with [the party arbitrators] regarding the issues relating to [his] ability to serve as an impartial arbitrator." Mr. Bower repeated the statements made in his disclosure statement (and quoted above), reiterated the fact that CB Richard Ellis is a worldwide real estate company with a large network of brokers and related real estate services, and noted that Casden is a large Los Angeles real estate development company, and that Ross is a national retailer with hundreds of locations. According to Mr. Bower, Mr. Travers and Mr. Soboroff "acknowledged the likelihood that Casden and Ross had done business in the past with CB Richard Ellis brokers other than [Mr. Bower], and that the parties might do business with CB Richard Ellis brokers in the future[, but that Mr. Bower] personally had not been involved in any transactions involving either Casden or Ross, and knew of no specific transactions involving other CB Richard Ellis brokers and either of the parties."

Mr. Bower's declaration also establishes that he has no financial interest in CB Richard Ellis: "As a licensed California real estate broker with CB Richard Ellis, I generate real estate commissions from the sale and leasing of commercial real estate. I am paid a portion of the commissions I generate as and when such commissions are earned. I have no minimum or guaranteed salary. I only receive commissions on transactions in which I am involved, either individually or as a member of a team for a specific project. I do not receive commissions on transactions in which I am not involved, either individually or as a member of a team for a specific project. For example, I understand that it is alleged that I might have been biased against Casden

[5] The only evidence that Mr. Soboroff is involved in the Playa Vista Plaza development is Alan Casden's conclusory statement in his declaration and a newspaper article. According to Mr. Casden (the chairman and chief executive officer of Casden Park La Brea Retail LLC), "Mr. Soboroff is a highly experienced and well known real estate broker and investor, currently President of the massive Playa Vista real estate development south of Santa Monica." Attached to the declaration is a printout of two articles from the Los Angeles Times, one a 2005 report on the Playa Vista environmental impact report, the other a profile done at the time Mr. Soboroff was running for public office.

based on a relationship between Ross and a CB Richard Ellis broker in Pennsylvania. . . . I have never shared in any commission generated by CB Richard Ellis brokers for a transaction in Pennsylvania, and I have no expectation of ever receiving a share of any commission generated by CB Richard Ellis brokers for a transaction in Pennsylvania.

"I am informed that Casden has challenged my impartiality based upon political contributions I made to Mr. Soboroff's 2001 mayoral campaign. The aggregate total of such contributions was . . . $500. I did not make the contributions to Mr. Soboroff's campaign in an effort to further any social or business interest I might have with Mr. Soboroff. At the time of the arbitration, the contributions which I made to Mr. Soboroff four or more years previously were so insignificant in my estimation, they never even entered my mind. And, even if they had entered my mind, in my opinion they would have been irrelevant because they were insignificant and would not and did not impact upon my impartiality to render a fair decision."

Ross's evidence also established that Mr. Casden and Mr. Travers (Casden's party arbitrator) had each contributed $1,000 to Mr. Soboroff's campaign.

Based on this evidence and the parties' legal arguments (discussed at length below), the trial court granted the motion to vacate the arbitration award.[6]

---

[6] This is how the trial court explained its ruling:

". . . [Mr.] Bower did not disclose all matters that could cause Casden . . . to be aware of the facts to reasonably entertain a doubt that [Mr.] Bower would be able to be impartial. [Mr.] Bower's belief that the facts were not meaningful does not lead to the conclusion that the facts did not have to be revealed. The facts would have caused a person to reasonably entertain a doubt as to whether [Mr.] Bower would be impartial. [Mr.] Bower did not disclose that he had a previous relationship with Ross' party arbitrator, Steven Soboroff. [Mr.] Bower is employed as a First Vice President of the brokerage firm of CB Richard Ellis . . . . In *2001*, [Mr.] Bower personally contributed $500 to [Mr.] Soboroff's mayoral election campaign. Moreover, [CB Richard Ellis] and seventeen other individuals employed by [CB Richard Ellis] also contributed to [Mr. Soboroff's] campaign. [CB Richard Ellis] has earned approximately $250,000 in commissions from Ross, and has earned a commission from Playa Vista, a real estate development controlled by [Mr.] Soboroff. There is no showing that [Mr.] Bower was *not aware of all or a significant portion of this information at the time of the arbitration.* This information would make an impression of bias on a reasonable person.

". . . The standard to disqualify a judge and the standard which imposes a duty of disclosure on an arbitrator are not analogous. There is little oversight over an arbitrator, while a judge's financial interests, past clients, rulings, demeanor, and spoken statements are part of the public record. Litigants are not accorded such insight into the history of the arbitrator and are, in most cases, dependent upon the disclosure of [the] arbitrator. While the arbitrator and his employer's full history with Ross and [Mr.] Soboroff have not been set forth, there is sufficient information that establishes longstanding relationships between them, and that the relationships involve personal and financial interests. The fact that [Casden] has been unable to glean more substantial information concerning the relationships does not lead to the conclusion that

Ross appeals from the order vacating the arbitrator's award and denying the motion to confirm the award.

## DISCUSSION

Ross contends Mr. Bower had no duty to disclose any CB Richard Ellis transaction in which he had no financial interest, and no duty to seek out information about business transactions or political contributions unknown to him at the time his disclosures were made. We agree.[7]

### A.

As relevant, section 1281.9 provides: "(a) In any arbitration pursuant to an arbitration agreement, when a person is to serve as a neutral arbitrator, the proposed neutral arbitrator shall disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial, including . . . [¶] (1) The existence of any ground specified in Section 170.1 for disqualification of a judge . . . [;] [¶] (2) Any matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council pursuant to this chapter[;] [¶] . . . [and] [¶] (6) Any professional or significant personal relationship the proposed neutral arbitrator . . . has or has had with any party to the arbitration proceeding or lawyer for a party." (See *Jakks Pacific, Inc. v. Superior Court* (2008) 160 Cal.App.4th 596, 605 [72 Cal.Rptr.3d 914].)

Section 1286.2, subdivision (a)(6) authorizes the trial court to vacate an arbitration award if the arbitrator failed to disclose "*a ground for disqualification of which the arbitrator was then aware* . . . ." (Italics added.)

### B.

■ Only "significant or substantial business relationships between the neutral arbitrator and a party or his representative must be disclosed to the

insufficient information exists to support the vacating of the award due to the arbitrator's failure to disclose. [Casden,] having come forward with information establishing a financial and personal relationship between parties to the arbitration, has met its burden. [Casden] cannot be expected to provide more information where the scope and depth of the relationship is known by the arbitrator and [Ross], and [Casden] cannot undertake liberal discovery due to [the] privacy rights of third parties."

[7] Because the dispositive facts are undisputed and the issue—whether Mr. Bower complied with the disclosure requirements—is one of law, we review the order vacating the arbitration award de novo. (*SWAB Financial, LLC v. E*Trade Securities, LLC* (2007) 150 Cal.App.4th 1181, 1196 [58 Cal.Rptr.3d 904]; *Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44, 55–56 [16 Cal.Rptr.3d 687].)

other party, to avoid the appearance of impropriety, but ordinary and insubstantial business dealings do not necessarily require disclosure. . . . Because arbitrators are selected for their familiarity with the type of business dispute involved, they are not expected to be entirely without business contacts in the particular field, but they should disclose any repeated or significant contacts which they may have with a party to the dispute, his attorney or his chosen arbitrator." (*Guseinov v. Burns* (2006) 145 Cal.App.4th 944, 959 [51 Cal.Rptr.3d 903], citations omitted; see *San Luis Obispo Bay Properties, Inc. v. Pacific Gas & Elec. Co.* (1972) 28 Cal.App.3d 556, 569 [104 Cal.Rptr. 733] [an arbitrator " 'cannot be expected to provide the parties with his complete and unexpurgated business biography' "]; *Merit Ins. Co. v. Leatherby Ins. Co.* (7th Cir. 1983) 714 F.2d 673, 679 [there "is a tradeoff between impartiality and expertise"].)

Other than those disclosed by Mr. Bower, there were no significant or substantial business dealings between him and either party or the parties' representatives. By any reasonable definition, his $500 contribution to Mr. Soboroff's 2001 mayoral campaign was ordinary and insubstantial, and we simply disagree with the trial court's finding that the disclosure of this fact would have caused Casden to entertain a doubt about Mr. Bower's impartiality—particularly since Mr. Casden and Mr. Travers each contributed $1,000 to Mr. Soboroff's campaign.

C.

Because Mr. Bower had no financial interest in or knowledge of Ross's or Mr. Soboroff's dealings with other CB Richard Ellis brokers or the contributions made to Mr. Soboroff's campaign by others at CB Richard Ellis and CB Richard Ellis itself, Mr. Bower had no duty to disclose those transactions.

First, an arbitration award may be vacated only upon a finding that a neutral arbitrator failed to disclose a ground for disqualification "of which the arbitrator was then aware" (§ 1286.2, subd. (a)(6)), and this requirement of scienter is a deliberate expression of the Legislature's intent to prevent the undoing of an arbitration award based upon an arbitrator's unknowing failure to disclose information. (Legis. Counsel's Dig., Sen. Bill No. 475 (2001–2002 Reg. Sess.), chaptered as Stats. 2001, ch. 362; Assem. Com. on Judiciary, Analysis of Sen. Bill No. 475 (2001–2002 Reg. Sess.) as amended Aug. 20, 2001, p. 10.) Because it is undisputed that Mr. Bower was unaware of his coworkers' business dealings with Ross and Mr. Soboroff, it follows

that Mr. Bower had no duty to disclose those transactions. (*Betz v. Pankow* (1995) 31 Cal.App.4th 1503, 1511–1512 [38 Cal.Rptr.2d 107] [an arbitrator "cannot be faulted for failing to disclose facts of which he was unaware"].)

Second, Mr. Bower had no duty to disclose Ross's or Mr. Soboroff's dealings with other CB Richard Ellis brokers or the contributions made to Mr. Soboroff's campaign by CB Richard Ellis itself or others at CB Richard Ellis because Mr. Bower had no financial interest in those transactions and did not benefit from any of them, financially or otherwise. As Division Three of our court explained in *Michael v. Aetna Life & Casualty Ins. Co.* (2001) 88 Cal.App.4th 925, 940 [106 Cal.Rptr.2d 240], "to create an impression of possible bias that . . . requires disclosure, a business relationship must be substantial and involve financial consideration." (See also *San Luis Obispo Bay Properties, Inc. v. Pacific Gas & Elec. Co., supra*, 28 Cal.App.3d at pp. 567–568; *Banwait v. Hernandez* (1988) 205 Cal.App.3d 823, 830–831 [252 Cal.Rptr. 647]; *Betz v. Pankow, supra*, 31 Cal.App.4th at pp. 1510–1511.) Where, as in our case, it is uncontroverted that Mr. Bower had no financial interest of any kind in the business dealings between other CB Richard Ellis brokers and Ross or Mr. Soboroff, or in the contributions made by other CB Richard Ellis employees to Mr. Soboroff's campaign, there was no duty to disclose—because, aside from the fact that Mr. Bower was unaware of these facts, they would not have caused a reasonable person to entertain a doubt about Mr. Bower's ability to be impartial. (*Michael v. Aetna Life & Casualty Ins. Co., supra*, 88 Cal.App.4th at pp. 941–943.)[8]

■ In short, we agree with Ross that a neutral arbitrator who has no pecuniary interest in profits generated by his employer's business relationship with a party or a party's representative has no substantial business relationship with the party or its representative and, therefore, no duty to disclose such transactions. For this reason and because public policy favors the finality of arbitration awards (*Lesser Towers, Inc. v. Roscoe-Ajax Constr. Co.* (1969) 271 Cal.App.2d 675, 702 [77 Cal.Rptr. 100]), we conclude that the trial court erred in vacating the arbitrators' award and should, instead, have confirmed it.

[8] The cases relied on by Casden (*Schmitz v. Zilveti* (9th Cir. 1994) 20 F.3d 1043; *HSMV Corp. v. ADI Ltd.* (C.D.Cal. 1999) 72 F.Supp.2d 1122; *Close v. Motorists Mut. Ins. Co.* (1985) 21 Ohio App. 3d 228 [21 Ohio B. 244, 486 N.E.2d 1275]) discuss a lawyer-arbitrator's duty to disclose his past representation of a party to the arbitration and have nothing to do with the facts of our case—because lawyers, unlike realtors, are deemed to represent *all* of their firms' clients (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1144–1147 [86 Cal.Rptr.2d 816, 980 P.2d 371]).

## DISPOSITION

The order is reversed, and the cause is remanded to the trial court with directions to vacate its order granting Casden's petition to vacate the arbitrators' award and to enter a new order (1) denying that petition and (2) granting Ross's petition to confirm the award. Ross is entitled to its costs of appeal.

Rothschild, J., and Jackson, J.,* concurred.

A petition for a rehearing was denied May 15, 2008, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied July 15, 2008, S164121.

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.