Filed 1/18/23  Karimi v. Rombro CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ALI KARIMI,<br><br>     Plaintiff and Appellant,<br><br>     v.<br><br>S. ROGER ROMBRO et al.,<br><br>     Defendants and Respondents. | B312606<br><br>Los Angeles County<br>Super. Ct. No. 18STCV05500 |

APPEAL from an order of the Superior Court of Los Angeles County, John P. Doyle and Stuart M. Rice, Judges. Affirmed.

Nicholas Barton for Plaintiff and Appellant.

Rombro & Manley, S. Roger Rombro and Melinda A. Manley for Defendants and Respondents.

_____

Ali Karimi appeals the trial court's order confirming an arbitration award. The trial court correctly found Karimi presented no valid reason for vacating the award. We affirm. Undesignated citations are to the Code of Civil Procedure.

I

Karimi engaged attorney S. Roger Rombro and Rombro's firm Rombro & Associates to represent him in a marital dissolution proceeding and a related domestic violence action. We refer to Rombro and his firm collectively as Rombro. Karimi fired Rombro after the attorney-client relationship soured. Karimi sued Rombro to void the retainer agreement and for breach of the retainer agreement, professional negligence, and quantum meruit. The trial court granted Rombro's motion to compel arbitration.

Pursuant to their written agreement, Karimi and Rombro submitted the matter to the American Arbitration Association. The AAA appointed Robert Brown as the arbitrator. After five days of hearings, Brown issued an award finding against Karimi and ordering him to pay Rombro $75,224.40 in attorney fees.

Rombro petitioned to confirm the award. Karimi opposed the petition and moved to vacate the award. Karimi argued the award must be vacated because Brown had failed to disclose as required Rombro's participation at the 7th Annual Family Law Practice Seminar held at the University of West Los Angeles where Brown was president. The trial court found this disclosure was unnecessary and affirmed the arbitrator's award. Karimi appealed.

II

Karimi did not marshal an effective challenge to arbitrator Brown's impartiality.

A

California law favors the finality of arbitral awards. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9-10.)  Courts may vacate such an award only under the specific circumstances spelled out in Section 1286.2.  (*Speier v. Advantage Fund, LLC* (2021) 63 Cal.App.5th 134, 146.)  One such circumstance is where the arbitrator is aware of and fails to disclose a ground for disqualification within the prescribed time.  (§ 1286.2, subd. (a)(6).)  When this happens, the court must vacate the award. (*Speier* at 146.)  Section 1281.9, subdivision (a) describes the matters an arbitrator must disclose, including "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be impartial."

Whether arbitrators failed to disclose information that would cause a reasonable person to doubt their ability to be impartial is a mixed question of law and fact we review independently.  (*Haworth v. Superior Ct.* (2010) 50 Cal.4th 372, 385-386.)  In making this determination, actual bias is irrelevant. (*Id.* at p. 385.)  We consider whether an objective person aware of all of the facts would reasonably suspect bias; we do not consider the matter from the perspective of the partisan litigant.  (*Id.* at p. 389.)

B

Karimi advances several arguments why a reasonable person would not believe Brown could be impartial.  All stem from Rombro's and Brown's involvement with the family law seminar.  To evaluate these arguments, we set forth what the record does and does not show about Rombro, Brown, and the seminar, keeping in mind it was Karimi's burden to establish a factual basis for his challenge to the arbitral award.  (*Rebmann v.*

3

*Rohde* (2011) 196 Cal.App.4th 1283, 1290 [party alleging bias has burden of establishing facts showing it].)

Karimi did not suggest Brown and Rombro had a relationship of acquaintance or friendship, either before or during the seminar or at any time before the arbitration. Before the arbitration, Rombro did not know of Brown. No evidence showed Brown knew of Rombro. Apart from the seminar, Karimi has not suggested the two men were anything but strangers.

Nothing shows Brown or Rombro were involved in planning, producing, or managing the seminar. The Iranian American Lawyers' Association put on the seminar in association with two other bar associations and the university. The seminar had 20 named sponsors. Apart from Brown's status as president of the university, Karimi has not suggested Brown or Rombro belonged to the Iranian American Lawyers' Association or to another planning or organizing entity.

The seminar was a one-day event, lasting about eight hours. The program featured 41 scheduled speakers, including 19 judges, 16 attorneys, and six other specialists. Rombro was the moderator and panelist for one of five panels. Five other people joined Rombro as participants for this panel. Brown was not among them. A photo of this panel reveals an audience of perhaps 40 people seated in a large classroom. Karimi does not suggest Brown was in the audience for Rombro's panel or otherwise took note of this panel in some specific way.

Brown spoke during the seminar but was not a scheduled speaker; apparently his remarks were impromptu. Karimi offers no evidence Rombro was in the audience at this moment.

Apart from his own panel, Rombro did not attend or participate in the seminar. Rombro and Brown did not come into

4

contact with each other during the seminar. Nothing shows Brown had contact with or knew of Rombro as a result of the seminar or at any time before the arbitration.

In sum, Brown and Rombro were strangers before the arbitration. They both attended the seminar, but they did not meet, interact, or see each other there.

In essence, Karimi argues Brown should have disclosed the following: "I have no connection to Rombro. We both attended a one-day seminar, but we did not know of each other beforehand and we did not learn of each other as a result of it. We did not meet or see each other at the seminar. I did not know Rombro was there. He did not know I was there."

This situation did not create either a requirement of disclosure or an appearance of bias.

1

Karimi argues Rombro's participation as a panel moderator represents a substantial business relationship between Rombro and Brown. This argument is incorrect. Karimi has not shown a business relationship. There is no evidence Rombro got money from Brown or Brown's university. Rombro presumably consented to appear on this panel for the usual reasons lawyers participate in such affairs: some combination of public service, continuing education, marketing one's practice, and generalized networking. There is no evidence Brown or Brown's organization profited from Rombro's panel participation. Members of the seminar audience paid to attend, but the record does not show where this money went. No evidence shows this university was in the seminar business. It was Karimi's burden to show bias or an appearance of bias; we will not presume Brown or his entity sought to profit financially from this seminar. (See *Casden Park*

*La Brea Retail LLC v. Ross Dress for Less, Inc.* (2008) 162 Cal. App. 4th 468, 478 [business relationship must be substantial and involve financial consideration to require disclosure].)

To bolster this argument, Karimi submitted a copy of a comment on the seminar's website attributed to Rombro. The comment states Rombro spent over 40 hours preparing for the panel. Karimi argues Rombro's participation therefore had a value of at least $24,000 to Brown's university. He arrives at this figure by multiplying the 40 hours Rombro spent preparing by the $600 hourly rate he charged Karimi for his services. But Karimi has not established Brown or his university derived any financial benefit from the ticket sales for this seminar.

Karimi argues the trial court improperly based its determination that there was no substantial business relationship on the fact that there was only a single transaction. While the trial court properly considered as part of its analysis that Brown and Rombro did not have repeated contacts, the trial court also focused on how attenuated the alleged contact was and that Brown and Rombro did not meet at the seminar.

2

Karimi next argues Brown had a duty to disclose that both Brown and Rombro are "extremely involved" in the practice of family law, relying on *Benjamin, Weill & Mazer v. Kors* (2010) 189 Cal.App.4th 126 (*Benjamin I*) and *Advantage Medical Services, LLC v. Hoffma*n (2008) 160 Cal.App.4th 806 (*Advantage*). *Benjamin I* is depublished and not citeable. (Cal. Rules of Court 8.1115.) The later ruling, *Benjamin, Weill & Mazer v. Kors* (2011) 195 Cal.App.4th 40 (*Benjamin II)*, is no more helpful to Karimi's argument than was *Benjamin I*. Brown's resume contains no references to family law. He has no

discernable connection to family law other than being the president of a university that hosted this family law seminar. *Benjamin II* and *Advantage* are inapposite.

3

Karimi also argues Rombro had an independent duty as a judge pro tempore and attorney to disclose his connection with Brown. Karimi admits there is no authority imposing such a duty and asks us to create new law. Neither logic nor precedent supports Karimi's argument for disclosing a nonexistent connection. We reject this argument.

4

Karimi argues Rombro owed him a duty as his former attorney to disclose Rombro's connection with Brown. Karimi again acknowledges he has no authority on this point. He fails to establish that a breach of this supposed duty would constitute grounds to vacate the arbitration award, and Karimi has not established there was any connection to disclose in the first place.

5

Karimi's final argument is that the trial court should have allowed him to conduct discovery to determine if there were further connections between Brown and Rombro. Karimi asked to depose Brown and Rombro. The court impliedly denied this request.

We review a trial court's discovery rulings for abuses of discretion. (*Manela v. Superior Court* (2009) 177 Cal.App.4th 1139, 1145.) Karimi provided no evidence sufficient to support his accusations against Brown. The trial court's implicit refusal to grant Karimi's last-minute request for discovery in these circumstances was well within its discretion.
///

7

## DISPOSITION

We affirm the order and award costs to respondents.


WILEY, J.

We concur:


GRIMES, Acting P. J.


HARUTUNIAN, J.*

_____

*      Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.