[No. B095412. Second Dist., Div. Six. Aug.12, 1996.]

BILLIE ALLAYNE CERIALE, Plaintiff and Respondent, v.
AMCO INSURANCE COMPANY, Defendant and Appellant.

## COUNSEL

Horvitz & Levy, Peter Abrahams, John A. Taylor, Jr., Borton, Petrini & Conron and R. Stephen Kinnaird for Defendant and Appellant.

Joseph W. Klobas, Carrington & Nye, David L. Nye and Richard A. Carrington for Plaintiff and Respondent.

## OPINION

**GILBERT, J.**—Arbitration No. 1 is a binding arbitration. While it is pending, one of the attorneys involved in arbitration No. 1 becomes an arbitrator in arbitration No. 2, a judicial arbitration. Must the arbitrator in arbitration No. 1 disclose that she represents a party in arbitration No. 2? Yes.

AMCO Insurance Company (AMCO) appeals from the order of the trial court denying its motion to correct or vacate the arbitrator's award of $278,168.52 for injuries sustained by respondent, Billie Allayne Ceriale (Ceriale), in an automobile accident with an uninsured motorist. Because a reasonable person aware of the facts might entertain a doubt that the arbitrator would be impartial, we reverse.

### FACTS

Ceriale was involved in an automobile accident with an uninsured driver. The firm of Carrington & Nye represented him.

The firm petitioned the trial court to compel appointment of an arbitrator for binding arbitration. Richard Carrington appeared at the hearing on the motion to compel on behalf of Ceriale. AMCO neither appeared at the hearing nor opposed the petition on the motion. The trial court appointed Victoria Lindenauer arbitrator at Carrington's suggestion.

On March 7, 1995, Lindenauer disclosed that she had served as an arbitrator in "at least two cases in which Carrington & Nye were counsel

. . . . That same firm has also referred two or three plaintiff's cases to me. I also worked as defense counsel on a number of cases for Allied Insurance (which I believe is related to AMCO) while in my former partnership of McIvers & Lindenauer . . . and possibly while at Archibald & Spray . . . . [¶] If either of you requires specifics as to case names, etc., please advise." AMCO made no inquiries.

Lindenauer did not state that sometime between 1986 and 1992, she was an associate in Archibald & Spray along with Nye and Richard Hardin, who is the current managing partner of Borton, Petrini & Conron, one of the counsel of record for AMCO in the instant case. Nye had known Lindenauer for years. AMCO's attorneys in the instant case were aware of these past associations.

The instant matter was originally scheduled for April 28, 1995, but AMCO requested a continuance of over three months. The matter was heard on July 7 and July 18, 1995.

On May 11, 1995, in another case, the trial court appointed Nye to be the arbitrator in a four-party nonbinding judicial arbitration, Stangvilla v. J.C. Penney. Lindenauer represented Stangvilla, and she was notified of Nye's appointment as arbitrator for the case. Lindenauer did not reveal to the parties in the Ceriale case that she represented Stangvilla. On July 17, 1995, Nye heard the Stangvilla matter. Because Lindenauer was ill, she sent another attorney to appear at the Stangvilla hearing.

Although Nye had prepared his decision in favor of Stangvilla, he did not reveal it until July 24, 1995. He purposefully held his decision ". . . to avoid even the appearance of attempting to influence Ms. Lindenauer by the favorable award in the Stangvilla case." On July 24, 1995, he was informed that Lindenauer's decision in the instant matter was being placed in the mail and his secretary served Nye's decision in Stangvilla. On that date, he was unaware what decision Lindenauer had made in the Ceriale case.

On July 25, 1995, Lindenauer served her decision in the Ceriale case. She awarded $278,168.52 in damages which AMCO refused to pay. Initially, AMCO petitioned the trial court to correct or vacate the award for miscalculation inconsistent with the specific findings, for a decision in excess of the arbitrator's powers and for misconduct in calculation of the damages awarded. Ceriale opposed AMCO's petition and moved to confirm the award. The motions were consolidated for hearing.

On August 16, 1995, AMCO filed supplemental points and authorities. AMCO asserted that the award should be overturned because Lindenauer

had not revealed either her past association with Nye or that she arbitrated the Ceriale case while Nye arbitrated the Stangvilla case. AMCO argued that these facts might create the impression of possible bias. The trial court denied AMCO's motion, confirmed Ceriale's award and entered judgment. This appeal ensued. (Code Civ. Proc., § 1294, subd. (b).)

## DISCUSSION

■ AMCO argues that the award should be vacated because Lindenauer did not disclose that Nye was selected to arbitrate the Stangvilla case. ■ Generally, the merits of an arbitrated controversy are not subject to judicial review. (*Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 11 [10 Cal.Rptr.2d 183, 832 P.2d 899].) But, the trial court may vacate an arbitration award pursuant to Code of Civil Procedure section 1286.2. (*Marsch* v. *Williams* (1994) 23 Cal.App.4th 238, 243-244, fn. 6 [28 Cal.Rptr.2d 402]; *Lopes* v. *Millsap* (1992) 6 Cal.App.4th 1679, 1685 [8 Cal.Rptr.2d 814].) In pertinent part, section 1286.2 states that ". . . the court shall vacate the award if the court determines . . . [¶] (c) [t]he rights of the party were substantially prejudiced by misconduct of a neutral arbitrator."

California Rules of Court, rule 1606(a) provides that "[i]*t shall be the duty of the arbitrator to determine whether any cause exists for disqualification* upon any of the grounds set forth in section 170.1 of the Code of Civil Procedure . . . ." (Italics added; see also Code Civ. Proc., § 1282, subd. (e).) In pertinent part, Code of Civil Procedure section 170.1, subdivision (a)(6) provides for disqualification of a judge when "a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial."

■ We consider whether the record reveals facts which might create an impression of possible bias in the eyes of the hypothetical, reasonable person. (*Betz* v. *Pankow* (1995) 31 Cal.App.4th 1503, 1507-1508 [38 Cal.Rptr.2d 107].) The award may be vacated if such facts exist. (*Neaman* v. *Kaiser Foundation Hospital* (1992) 9 Cal.App.4th 1170, 1174-1175 [11 Cal.Rptr.2d 879]; *Johnston* v. *Security Ins. Co.* (1970) 6 Cal.App.3d 839, 841-842 [86 Cal.Rptr. 133]; Cal. Rules of Court, rule 1615(d).) We review the case in light of its particular circumstances. (*Betz*, *supra*, at p. 1508.)

■ In *Commonwealth Corp.* v. *Casualty Co.* (1968) 393 U.S. 145 [21 L.Ed.2d 301, 89 S.Ct. 337], the arbitrator had business dealings with the prime contractor involved in the arbitration. The arbitrator had collected fees of about $12,000 from the contractor over four or five years, although he had not been employed by the contractor for the year preceding the arbitration.

In *Commonwealth*, the high court stated that arbitrators must "disclose to the parties any dealings that might create an impression of possible bias[,]" including sporadic but substantial business relationships, even in the absence of actual fraud, corruption or partiality. (*Id.*, at p. 149 [21 L.Ed.2d at pp. 304-305.)

California courts have adopted the *Commonwealth* test. (*Johnston* v. *Security Ins. Co.*, *supra*, 6 Cal.App.3d at pp. 841-842.) In *Johnston*, the Court of Appeal vacated an arbitration award because the neutral arbitrator did not disclose substantial past and projected business relationships with the claimants' party attorney-appraiser. (*Id.*, at pp. 842-844; see also *Neaman* v. *Kaiser Foundation Hospital*, *supra*, 9 Cal.App.4th at p. 1177 [award vacated because neutral arbitrator did not reveal that on five previous occasions he was Kaiser's party arbitrator and that he had a substantial business relationship with Kaiser]; *Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 370, 372 [133 Cal.Rptr. 775, 84 A.L.R.3d 343] [award vacated because arbitrator did not disclose that after selection he was employed as expert witness by law firm representing one of the parties in unrelated case]; *Figi* v. *New Hampshire Ins. Co.* (1980) 108 Cal.App.3d 772, 778 [166 Cal.Rptr. 774] [award vacated because neutral arbitrator worked as accountant for a party insurance company in five unrelated matters during period of arbitration]; *Gebers* v. *State Farm General Ins. Co.* (1995) 38 Cal.App.4th 1648, 1653-1654 [45 Cal.Rptr.2d 725] [award vacated because arbitrator did not disclose he was retained as expert witness by party to the arbitration in two other pending court actions].) It is the duty of the arbitrator to reveal facts which might create the impression of bias. (*Kaiser Foundation Hospitals, Inc.* v. *Superior Court* (1993) 19 Cal.App.4th 513, 517 [23 Cal.Rptr.2d 431].)

Arbitration awards need not be vacated in every case in which there has been some contact between the arbitrator and counsel, particularly when the contact is slight or attenuated. The *Commonwealth* case recognized that arbitrators cannot sever all their ties with the business world. (*Commonwealth Corp.* v. *Casualty Co.*, *supra*, 393 U.S. at pp. 148-149 [21 L.Ed.2d at pp. 304-305]; also see *Aetna Life Insurance Co.* v. *Lavoie* (1986) 475 U.S. 813, 825, fn. 3 [89 L.Ed.2d 835, 106 S.Ct. 1580]; and see generally, *Park Plaza, Ltd.* v. *Pietz* (1987) 193 Cal.App.3d 1414 [239 Cal.Rptr. 51], disapproved on other grounds in *Moncharsh* v. *Heily & Blase*, *supra*, 3 Cal.4th at pp. 27-28; *Betz* v. *Pankow*, *supra*, 31 Cal.App.4th at pp. 1511-1512; *Banwait* v. *Hernandez* (1988) 205 Cal.App.3d 823 [252 Cal.Rptr. 647]; *San Luis Obispo Bay Properties, Inc.* v. *Pacific Gas & Elec. Co.* (1972) 28 Cal.App.3d 556, 567-570 [104 Cal.Rptr. 733]; *Gonzales* v. *Interinsurance Exchange* (1978) 84 Cal.App.3d 58 [148 Cal.Rptr. 282] [friendly acquaintance between arbitrator and senior partner of a party's law firm insufficient to show bias].)

 Here, the trial court stated that "[t]he attempt to somehow impugn the integrity of these lawyers or that arbitrator [Lindenauer] will meet with a very unpleasant reaction from the Court. I know these people well, and they are competent conscientious, ethical people." The trial court repeatedly stated that Lindenauer, Nye and Carrington are beyond reproach, an assessment that we have no cause to dispute.

The court's appraisal, based on facts outside the record, does not resolve the issues here. The question is not whether any of these people might actually be biased; the question is whether "a person aware of the facts might reasonably entertain a doubt that the [arbitrator] would be able to be impartial" given the particular circumstances of the case. (*Betz* v. *Pankow*, *supra*, 31 Cal.App.4th at p. 1508, fn. 3.) The test is an objective one—whether the facts might create an impression of possible bias in the eyes of the hypothetical reasonable person. (*Id.*, at p. 1508.)

Many circumstances aside from business dealings can create the impression of possible bias. An indirect relationship between an arbitrator and the attorney for one of the parties can create such an impression. (See and cf. *San Luis Obispo Bay Properties, Inc.* v. *Pacific Gas & Elec. Co.*, *supra*, 28 Cal.App.3d at pp. 567-570 [membership in same professional organization, occasional referral of cases without compensation and a distant common "relationship" with a third individual which did not involve business or socializing are insufficient to create impression of possible bias].) Here, on the other hand, a reasonable person could entertain doubt about Lindenauer's partiality under the instant facts.

When Lindenauer arbitrated the Ceriale case, she knew that Nye would be arbitrating the Stangvilla case. Nye heard the Stangvilla arbitration on July 17, 1995. Lindenauer heard the Ceriale arbitration on July 7 and July 18, 1995. Nye purposefully withheld his decision in Stangvilla because he did not want to influence Lindenauer's decision in Ceriale. Both arbitrators were in an uncomfortable position. A reasonable person could think that Lindenauer would be concerned about how Nye would rule and that might affect her ruling. Although the Stangvilla arbitration was nonbinding, its outcome carries potential ramifications for settlement negotiations in lieu of a trial de novo. Furthermore, a party who requests trial de novo after arbitration must pay costs and fees if the party does not obtain a more favorable result. (Code Civ. Proc., § 1141.25.)

Our decision is not a reflection on the integrity of the arbitrators involved here. We assume they maintain the highest ethical standards. Nonetheless, we must reverse the judgment because a reasonable person might have an

impression of possible bias under the instant facts. The judgment is reversed. Parties to bear their own costs.

Stone (S. J.), P. J., concurred.

**YEGAN, J.**—I respectfully dissent. The price of perfect justice is too high. (See Fleming, The Price of Perfect Justice (1974.) The majority reverse because the record reveals facts which, in the eyes of a hypothetical person, might create an impression of possible bias. (*Betz* v. *Pankow* (1995) 31 Cal.App.4th 1503, 1507-1508 [38 Cal.Rptr.2d 107].) The use of the words "might," "impression," "possible," and "hypothetical person" make me uneasy. While the appearance of justice is an important ideal for which we should strive, we must not become slaves to the ideal at the expense of justice.

Here the motion to vacate was fueled by the size of the award, $278,168.52. There was no showing that AMCO, a sophisticated insurance carrier, would have objected to the arbitrator had it known of the simultaneous arbitrations. This is especially true because the other arbitration was not binding.

I agree that the arbitrator should have disclosed the simultaneous arbitrations. AMCO, however, was in no position to complain about the perception of possible bias after the arbitrator found for the insured. It refused to arbitrate and only did so after the insured petitioned to compel arbitration. The superior court sanctioned AMCO for its actions. The arbitrator was selected and made several disclosures, i.e., that she had arbitrated other cases for the attorney representing the uninsured motorist, that that attorney had referred cases to her, and that she had previously represented an affiliate carrier of AMCO. AMCO did not respond to the disclosures or make further inquiry.

I am of the view that AMCO was estopped from later challenging the award on the ground of possible bias. Of course, hindsight is 20-20. After the arbitrator reads the majority opinion, she will realize that she should have disclosed the hypothetical conflict. In a perfect world, she would have disclosed as soon as she realized that a hypothetical reasonable person might question her impartiality. She did not do so and the result is that the insured, who was without fault, suffers.

The majority's opinion will not result in an armageddon. I do, however, predict a plethora of disclosure statements flying about before and during an arbitration. It is bound to have a chilling effect on the arbitration process.

Further comment on the nature of the simultaneous arbitrations seems appropriate. AMCO's arbitration was "binding" but the other arbitration was not. While some consequences flow from "nonbinding" arbitration, they pale in comparison to "binding" arbitration. I doubt that the hypothetical reasonable person would believe the arbitrator was biased if he or she knew that the award rendered in a "nonbinding" arbitration would be automatically erased by a trial de novo request. Nor am I certain that the fully informed hypothetical reasonable person would credit the unspoken premise of AMCO'S appeal, i.e., that two attorneys would, in essence, sell their integrity for pecuniary gain.

For these reasons, I would affirm the order denying the motion to vacate the arbitration award.