[No. B216110. Second Dist., Div. Seven. Dec. 21, 2009.]

PETER MAHNKE et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CALIFORNIA FAIR PLAN ASSOCIATION, Real Party in Interest.

## COUNSEL

Shane, DiGiuseppe & Rodgers and Stephen A. DiGiuseppe for Petitioners.

No appearance for Respondent.

Millard, Holweger, Child & Marton and Bradley P. Childers for Real Party in Interest.

## OPINION

**PERLUSS, P. J.**—When an insurer and its insured fail to agree on the amount of loss following a fire, the Insurance Code requires each of them to select a "competent and disinterested appraiser," who are in turn required to agree on a "competent and disinterested umpire" (or request appointment of one by the court) to form a three-member panel to adjudge the amount of loss. (Ins. Code, § 2071.) California courts have concluded this adjudication must be conducted pursuant to the provisions of the California Arbitration Act, Code of Civil Procedure section 1280 et seq.[1] (Arbitration Act). (See, e.g., *Lambert v. Carneghi* (2008) 158 Cal.App.4th 1120, 1129 [70 Cal.Rptr.3d 626].)

Section 1281.9 of the Arbitration Act requires proposed neutral arbitrators to disclose to opposing parties the existence of any potential grounds for disqualification. If a party objects to the proposed neutral arbitrator, section 1281.91 requires the objecting party to serve a notice of disqualification within 15 days of receipt of the disclosure statement. Do these disclosure and disqualification provisions apply only to the jointly proposed umpire in a loss appraisal proceeding or also to the "competent and disinterested" appraisers unilaterally designated by the parties? If they do not apply, under what circumstances may a party to the appraisal proceeding disqualify an opposing party appraiser for cause?

In this case the party-selected appraisers provided disclosure statements identifying potential conflicts. Two months after the disclosures, the insurer, California FAIR Plan Association (CFPA), sought to disqualify the party appraiser selected by their insureds, Peter and Patricia Mahnke. The trial court granted CFPA's petition, concluding (a) although section 1281.9's disclosure and disqualification standards apply to party-selected appraisers, section 1281.91's 15-day limitation period for disqualification petitions does not; and (b) the Mahnkes' party-appraiser's retention as an expert witness by another client of the Mahnkes' counsel was an impermissible conflict of

---

[1] Statutory references are to the Code of Civil Procedure unless otherwise indicated.

interest requiring his disqualification. Because we disagree with respondent superior court's analysis on both points, we grant the petition for writ of mandate filed by the Mahnkes and direct respondent superior court to vacate its order disqualifying their party appraiser and to enter a new order denying CFPA's petition to disqualify him.

## FACTUAL AND PROCEDURAL BACKGROUND

After the Mahnkes' home was severely damaged in the November 2008 Sylmar wildfires, they tendered a claim to CFPA. CFPA acknowledged coverage, adjusted the claim and offered payment. The Mahnkes did not agree with CFPA's assessment of their damages and elected to proceed under the appraisal provision of the policy.

On January 26, 2009 the Mahnkes served CFPA with notice of this election and their choice of Robert McConihay to serve as their appraiser. The next day CFPA responded with the name of the appraiser it had selected, William Bruce Reid. On February 9, 2009 Mr. Reid mailed a disclosure statement indicating his own lack of financial interest in the outcome of the appraisal and disclosing he was currently serving as CFPA's designated appraiser in another pending action. In a letter dated February 11, 2009 the Mahnkes' counsel responded, "[t]hough we are unaware of a requirement to make the disclosure . . . your appraiser has made, out of courtesy we will do the same." Mr. McConihay's disclosure statement asserted he lacked any financial interest in the outcome of the proceeding and had no previous dealings with the parties. The declaration disclosed, however, he was currently engaged as a construction expert for another client of the law firm representing the Mahnkes. The letter also attached his resume, which recounted his professional experience and included the names of 14 lawyers, including the Mahnkes' counsel, as references. By the time the disclosure statement was mailed to CFPA, Mr. McConihay had already completed his appraisal of the damages suffered by the Mahnkes.

On March 31, 2009, after retaining outside counsel, CFPA demanded the Mahnkes withdraw Mr. McConihay as their appraiser based on his concurrent association with another party represented by the Mahnkes' counsel. The Mahnkes refused. On April 8, 2009 the Mahnkes filed a petition with respondent court seeking appointment of a neutral umpire. Two days later CFPA filed a petition seeking to disqualify Mr. McConihay from acting as the Mahnkes' designated appraiser. The court granted the petition on May 7, 2009, reasoning section 1281.9 requires party-selected appraisers, as well as the neutral umpire, to make the specified disclosures, but section 1281.91's limitation on the time to disqualify a proposed neutral arbitrator does not apply to a party-selected appraiser. The court also ruled Mr. McConihay's

professional relationship with another client of the law firm representing the Mahnkes created "an impression of possible bias" that warranted his disqualification.

On May 15, 2009 the Mahnkes petitioned this court for a writ of mandate compelling the trial court to vacate its order granting CFPA's petition to disqualify their party-selected appraiser and to enter a new order denying the petition. At this court's request CFPA filed its opposition to the petition, styled as a "return," on June 4, 2009. On June 10, 2009 we issued an order to show cause why the relief requested in the petition should not be granted. CFPA filed a "second return" to the petition on June 30, 2009; the Mahnkes filed their reply on July 9, 2009.

## DISCUSSION

### 1. *The Appraisal Provision of Insurance Code Section 2071*

■ Fire insurance policies on California properties have long been required to use standard language specified by the Legislature. (See Ins. Code, § 2070; *Burns v. California FAIR Plan Assn.* (2007) 152 Cal.App.4th 646, 656 [61 Cal.Rptr.3d 809].) Among other policy provisions, in the event the insurer and the insured disagree about the amount of loss, Insurance Code section 2071 requires the parties to participate in an informal appraisal proceeding in which each party selects "a competent and disinterested appraiser," who together must then select (or, if the party-selected appraisers cannot agree, have the court appoint) "a competent and disinterested umpire." The party-selected appraisers are each required to appraise the loss and, in the event of disagreement, submit their differences to the umpire for adjudication.[2]

---

[2] Insurance Code section 2071 provides in part: "Appraisal [¶] In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written request of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of the request. Where the request is accepted, the appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon the umpire, then, on request of the insured or this company, the umpire shall be selected by a judge of a court of record in the state in which the property covered is located. Appraisal proceedings are informal unless the insured and this company mutually agree otherwise. For purposes of this section, 'informal' means that no formal discovery shall be conducted, including depositions, interrogatories, requests for admission, or other forms of formal civil discovery, no formal rules of evidence shall be applied, and no court reporter shall be used for the proceedings. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him or her and the expenses of appraisal and umpire shall be paid by the parties equally. In the event of a government-declared disaster, as defined in the Government Code, appraisal may be requested by either the insured or this company but shall not be compelled."

The "Appraisal" provision in the current version of the statute has remained largely unchanged since it was first enacted in 1949. (See Stats. 1949, ch. 556 § 2, pp. 955, 959.)[3] In particular, the terms "competent and disinterested appraiser" and "competent and disinterested umpire" appear in the original, 1949 legislation. (Stats. 1949, ch. 556, § 2, pp. 955, 959.) The most significant amendments to section 2071 occurred in 2001, in response to complaints of insurer abuses following the Oakland hills fire of 1991, the Northridge earthquake of 1994 and the Napa earthquake of 2000. (See Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 658 (2001–2002 Reg. Sess.) as amended Sept. 12, 2001, p. 3.) In an effort to equalize the positions of insurers and insureds and to streamline the appraisal process by reducing the opportunity for delaying tactics by insurers, the following language was inserted into the Appraisal paragraph: "Appraisal proceedings are informal unless the insured and this company mutually agree otherwise. For purposes of this section, 'informal' means that no formal discovery shall be conducted, including depositions, interrogatories, requests for admission, or other forms of formal civil discovery, no formal rules of evidence shall be applied, and no court reporter shall be used for the proceedings." (Stats. 2001, ch. 583, § 4.)

█ Notwithstanding this statutory direction to maintain the informality of appraisal proceedings, in general those proceedings must also conform to the procedural requirements of the Arbitration Act. (See *Lambert v. Carneghi, supra,* 158 Cal.App.4th at p. 1134 ["it is well settled that an appraisal pursuant to section 2071 is an arbitration as a matter of law"]; accord, *Michael v. Aetna Life & Casualty Ins. Co.* (2001) 88 Cal.App.4th 925, 934 [106 Cal.Rptr.2d 240] (*Michael*); see generally *Coopers & Lybrand v. Superior Court* (1989) 212 Cal.App.3d 524, 531–534 [260 Cal.Rptr. 713] [adoption of Arbitration Act in 1961 erased historical distinction between appraisal and arbitration proceedings; appraisals now subject to Arbitration Act].)

2. *The Disclosure and Disqualification Provisions of the Arbitration Act*

█ Courts have long struggled with the problem of ensuring not only the neutrality but also the perception of neutrality of arbitrators, who wield tremendous power to decide cases and whose actions lack, for the most part, substantive judicial review. As the United States Supreme Court observed in vacating an arbitration award under the Federal Arbitration Act, "It is true that arbitrators cannot sever all their ties with the business world, since they are not expected to get all their income from their work deciding cases, but

---

[3] Although Insurance Code section 2071 was enacted in 1949, the Legislature has regulated fire insurance policies since 1909. (See *Gebers v. State Farm General Ins. Co.* (1995) 38 Cal.App.4th 1648, 1651 [45 Cal.Rptr.2d 725].)

we should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review. We can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias." (*Commonwealth Corp. v. Casualty Co.* (1968) 393 U.S. 145, 148–149 [21 L.Ed.2d 301, 89 S.Ct. 337] (*Commonwealth*); see *Ceriale v. AMCO Ins. Co.* (1996) 48 Cal.App.4th 500, 504 [55 Cal.Rptr.2d 685] [disclosure required when disclosed information might "create an impression of possible bias in the eyes of the hypothetical, reasonable person"]; accord, *Betz v. Pankow* (1995) 31 Cal.App.4th 1503, 1508 [38 Cal.Rptr.2d 107].)

Disclosure requirements, therefore, have become standard components of arbitration legislation. Since 1994 section 1281.9 of the Arbitration Act has required proposed neutral arbitrators to disclose "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial." (§ 1281.9, subd. (a).)[4]

Few reported cases, however, have considered disclosures by party-selected arbitrators. As one court explained, "bias in a party arbitrator is expected and

---

[4] Section 1281.9, subdivision (a), requires a proposed neutral arbitrator to disclose: "(1) The existence of any ground specified in Section 170.1 for disqualification of a judge. For purposes of paragraph (8) of subdivision (a) of Section 170.1, the proposed neutral arbitrator shall disclose whether or not he or she has a current arrangement concerning prospective employment or other compensated service as a dispute resolution neutral or is participating in, or, within the last two years, has participated in, discussions regarding such prospective employment or service with a party to the proceeding. [¶] (2) Any matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council pursuant to this chapter. [¶] (3) The names of the parties to all prior or pending noncollective bargaining cases in which the proposed neutral arbitrator served or is serving as a party arbitrator for any party to the arbitration proceeding or for a lawyer for a party and the results of each case arbitrated to conclusion, including the date of the arbitration award, identification of the prevailing party, the names of the parties' attorneys and the amount of monetary damages awarded, if any. In order to preserve confidentiality, it shall be sufficient to give the name of any party who is not a party to the pending arbitration as 'claimant' or 'respondent' if the party is an individual and not a business or corporate entity. [¶] (4) The names of the parties to all prior or pending noncollective bargaining cases involving any party to the arbitration or lawyer for a party for which the proposed neutral arbitrator served or is serving as neutral arbitrator, and the results of each case arbitrated to conclusion, including the date of the arbitration award, identification of the prevailing party, the names of the parties' attorneys and the amount of monetary damages awarded, if any. In order to preserve confidentiality, it shall be sufficient to give the name of any party not a party to the pending arbitration as 'claimant' or 'respondent' if the party is an individual and not a business or corporate entity. [¶] (5) Any attorney-client relationship the proposed neutral arbitrator has or had with any party or lawyer for a party to the arbitration proceeding. [¶] (6) Any professional or significant personal relationship the proposed neutral arbitrator or his or her spouse or minor child living in the household has or has had with any party to the arbitration proceeding or lawyer for a party."

furnishes no ground for vacating an arbitration award, unless it amounts to 'corruption.' " (*Tate v. Saratoga Savings & Loan Assn.* (1989) 216 Cal.App.3d 843, 858 [265 Cal.Rptr. 440], disapproved on other grounds in *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376–377 [36 Cal.Rptr.2d 581, 885 P.2d 994]; see also *Good v. Kaiser Foundation Hospital* (1984) 152 Cal.App.3d 819, 822 [199 Cal.Rptr. 581] ["[t]he California Law Revision Commission, in its study and recommendations made prior to the adoption of section 1286.2, recognized that party-appointed arbitrators are rarely 'neutral' "].)[5]

■ Party-selected appraisers, however, have been treated differently from party arbitrators due to Insurance Code section 2071's specification that each party select a "competent and disinterested appraiser." This requirement, incorporated into every fire insurance policy issued in California, in effect constitutes a contractual agreement between the parties to select neutral appraisers. (See, e.g., *Louise Gardens of Encino Homeowners' Assn., Inc. v. Truck Ins. Exchange, Inc.* (2000) 82 Cal.App.4th 648, 658 [98 Cal.Rptr.2d 378] ["[a]n agreement to conduct an appraisal contained in a policy of insurance constitutes an 'agreement' within the meaning of section 1280, subdivision (a), and therefore is considered to be an arbitration agreement subject to the statutory contractual arbitration law" (fn. omitted)]; see generally Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2008) ¶¶ 5:29 to 5:29.1, p. 5-21 (rev. # 1, 2008).) For instance, in *Gebers v. State Farm General Ins. Co., supra*, 38 Cal.App.4th 1648 (*Gebers*) the court concluded party-selected appraisers are held to a higher standard of impartiality than are party arbitrators precisely because of this legislative mandate. (*Id.* at pp. 1652–1653; see *Lambert v. Carneghi, supra*, 158 Cal.App.4th at p. 1135.) Because the insurer-selected appraiser in *Gebers* had a direct pecuniary interest in ongoing litigation work for State Farm, the court vacated the underlying arbitration award based on the appraiser's presumed bias. (*Gebers*, at p. 1652; see also *Figi v. New Hampshire Ins. Co.* (1980) 108 Cal.App.3d 772, 776–778 [166 Cal.Rptr. 774] [vacating arbitration award based on disinterested umpire's failure to disclose ongoing business relationship between himself and insurer's designated appraiser].) As the *Gebers* court explained, "current or prospective financial dealings with a party are well recognized as grounds for an arbitrator's disqualification." (*Gebers*, at p. 1653.) The court expressly rejected State Farm's reliance on *Tate v. Saratoga Savings & Loan Assn., supra*, 216 Cal.App.3d 843 and other cases accepting bias in a party arbitrator "because the Legislature made appraiser impartiality a statutory requirement." (*Gebers*, at p. 1653.)

---

[5] Former section 1286.2, subdivision (b), allowed vacation of an arbitration award based on "corruption" of the neutral arbitrator. (See Stats. 1961, ch. 461, § 2, pp. 1540, 1546.) Section 1286.2, subdivision (a)(2), now permits vacation of an arbitration award if the court finds "corruption in any of the arbitrators."

■ Against this backdrop our colleagues in Division Three of this court, writing in *Michael, supra,* 88 Cal.App.4th 925, applied the disclosure requirements contained in section 1281.9 to determine whether vacation of an appraisal award was warranted because of the failure of a party-selected appraiser to disclose potential conflicts. As the court explained, "Section 1281.9 of the California Arbitration Act imposes disclosure requirements on arbitrators and appraisers. '[P]roposed neutral arbitrators' must comply with disclosure requirements in section 1281.9, subdivisions (a) through (d). Section 1281.9, subdivision (e), however, uses different language. Subdivision (e) states, in relevant part: '*An arbitrator* shall disclose to all parties the existence of any grounds specified in Section 170.1 for disqualification of a judge; and, if any such ground exists, shall disqualify himself or herself upon demand of any party made before the conclusion of the arbitration proceeding.' (Italics added.) By using the phrase 'an arbitrator,' subdivision (e) does not limit itself to 'proposed neutral arbitrators.' All arbitrators, and therefore all appraisers, must comply with subdivision (e)." (*Michael,* at pp. 934–935, fn. omitted.)

As the *Michael* court recognized, before the enactment of section 1281.9, California courts had applied the rule in *Commonwealth, supra,* 393 U.S. 145 in deciding motions to vacate based on arbitrator bias. (*Michael, supra,* 88 Cal.App.4th at p. 937.) The court concluded former section 1281.9, subdivision (e), had in essence embodied the *Commonwealth* rule and that "failure to disclose constitutes one form of 'corruption' " under section 1286.2, subdivision (b). (*Michael,* at p. 936.) The court declined to vacate the award, however, after concluding the challenged appraiser's business relationship with the insurer was not substantial and he had no material financial interest in the profits derived by partners in his law firm who performed work for the insurer in other states. (*Id.* at pp. 942–943.)

However, just months after *Michael* was decided, the Legislature re-wrote section 1281.9.[6] (See Stats. 2001, ch. 362, § 5.) Section 1281.9, subdivision (a) now imposes disclosure requirements on a "proposed neutral arbitrator," and the statutory provision relied upon in *Michael* (former § 1281.9, subd. (e) ["[a]n arbitrator shall disclose"]), has been revised to state "the proposed neutral arbitrator shall disclose . . . ." (§ 1281.9, subd. (b).) In other words, the single reference in the previous version of section 1281.9 to "an arbitrator" is now restricted to "the proposed neutral arbitrator," as are the

---

[6] Both parties in this writ proceeding originally assumed the continued applicability of *Michael* and section 1281.9 to the questions presented, that is, whether, and how, a party to an appraisal proceeding under Insurance Code section 2071 may disqualify the other party's unilaterally selected appraiser based on the appraiser's disclosures. After our request for additional briefing on the continued applicability of *Michael,* the parties agreed the changes in the statutory scheme meant the specific holding in *Michael* no longer answered these questions.

disclosure requirements in the other portions of that statute. The term "proposed neutral arbitrator," in turn, is defined in section 1280, subdivision (d), as one "who is (1) selected jointly by the parties or by the arbitrators selected by the parties or (2) appointed by the court when the parties or the arbitrators selected by the parties fail to select an arbitrator who was to be selected jointly by them."

Senate Bill No. 475 (2001–2002 Reg. Sess.), which effected these amendments to section 1281.9, also added section 1281.85, which required the Judicial Council to adopt, no later than July 2002, ethical standards for all neutral arbitrators that could "expand but . . . not limit the disclosure and disqualification requirements established by this chapter." As mandated by this section, the Judicial Council promulgated "Ethics Standards for Neutral Arbitrators in Contractual Arbitration," which can be found in the California Rules of Court. Standard 3(b) states, "These standards do not apply to: [¶] (1) Party arbitrators, as defined in these standards . . . ." Standard 2(q) defines a party arbitrator as "an arbitrator selected unilaterally by a party." (See *Jakks Pacific, Inc. v. Superior Court* (2008) 160 Cal.App.4th 596, 605 [72 Cal.Rptr.3d 914].)

■ The statutory underpinning for the decision in *Michael* having been displaced, that case no longer answers the question before us. The statutory scheme now imposes a disclosure obligation exclusively on the "proposed neutral arbitrator" who, like the "umpire" contemplated in Insurance Code section 2071, is either selected jointly by the parties and their respective party arbitrators or appointed by the court upon the failure of the parties to agree. While we are aware commentators have suggested sections 1281.9 and 1281.91 apply to any arbitrator who is required to be neutral, which includes a party-selected appraiser (see, e.g., Knight et al., Cal. Practice Guide: Alternative Dispute Resolution, *supra*, ¶ 5:487.2, p. 5-337 (rev. # 1, 2008)), in light of the express statutory language to the contrary, we necessarily disagree: The disclosure requirements in section 1281.9 and the Judicial Council's ethics standards for neutral arbitrators do not apply to any arbitrator other than the jointly selected, or court-appointed, proposed neutral arbitrator—or, in the case of a contested appraisal proceeding, the competent and disinterested umpire.

This result is not only consistent with the language of section 1281.9 itself but also comports with the intent expressed in the 2001 amendments to Insurance Code section 2071. In an effort to streamline proceedings and eradicate tactical delays in claim resolution, the Legislature expressly directed that appraisal proceedings be informal and not burdened with formal discovery, rules of evidence or reporters' transcripts. (See Stats. 2001, ch. 583, § 4.) So long as the proposed neutral umpire is subject to the Arbitration Act's

disclosure and disqualification requirements, subjecting the party-selected appraisers to the same obligations and limitations is inconsistent with the spirit of the Legislature's amendments. For instance, as recently explained by Division One of the Fourth District, "[s]ection 1281.91 'confers on both parties the unqualified right to remove a proposed arbitrator based on any disclosure required by law which could affect his or her neutrality. [Citation.] There is no good faith or good cause requirement for the exercise of this right, nor is there a limit on the number of proposed neutrals who may be disqualified in this manner. [Citation.] As long as the objection is based on a required disclosure, a party's right to remove the proposed neutral by giving timely notice is absolute.' " (*Luce, Forward, Hamilton & Scripps, LLP v. Koch* (2008) 162 Cal.App.4th 720, 729 [75 Cal.Rptr.3d 869]; see also *Azteca Construction, Inc. v. ADR Consulting, Inc.* (2004) 121 Cal.App.4th 1156, 1163 [18 Cal.Rptr.3d 142] [§ 1281.91, subd. (b)(1), "confers on both parties the unqualified right to remove a proposed arbitrator based on any disclosure required by law which could affect his or her neutrality. . . . As long as the objection is based on a required disclosure, a party's right to remove the proposed neutral by giving timely notice is absolute."]; Knight et al., Cal. Practice Guide: Alternative Dispute Resolution, *supra*, ¶¶ 7:238 to 7:239.1, pp. 7-59 to 7-60.)

Accordingly, in the context of "competent and disinterested appraiser[s]" selected by parties in appraisal proceedings pursuant to Insurance Code section 2071, absent express statutory direction, we decline to recognize an automatic and unlimited right of disqualification for disclosures made by those appraisers.[7]

---

[7] In holding that sections 1281.9 and 1281.91 do not apply to party-selected appraisers in proceedings under Insurance Code section 2071, we necessarily agree with respondent superior court and CFPA that section 1281.91's 15-day time limit for moving to disqualify a neutral arbitrator following the required disclosures also does not apply to a party-selected appraiser. Nonetheless, although there may be no fixed time limit, absent extraordinary circumstances, any challenge to a party-selected appraiser should be made at the first reasonable opportunity. (Cf. *People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 994 [47 Cal.Rptr.3d 467, 140 P.3d 775] ["[i]n general, if the trial court refuses or fails to disqualify itself, the complaining party must seek disqualification at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification"]; *White v. Superior Court* (1979) 98 Cal.App.3d 51, 55–56 [159 Cal.Rptr. 278] [abuse of discretion to grant motion to disqualify attorney because real parties in interest had failed to bring challenge at first reasonable opportunity].) Because we conclude CFPA's petition to disqualify the appraiser selected by the Mahnkes should be denied on the merits, we need not decide whether CFPA's delay in bringing the petition was unreasonable.

### 3. *Party-selected Appraisers May Be Disqualified When a Substantial Business Relationship Exists Between the Appraiser and a Party*

If sections 1281.9 and 1281.91 do not apply to party-selected appraisers in Insurance Code section 2071 proceedings, under what circumstances may a party-selected appraiser be disqualified?

■ We start from the United States Supreme Court's benchmark that impartial arbitrators must disclose to the parties any dealings that might "create an impression of possible bias."[8] (*Commonwealth, supra*, 393 U.S. at p. 149.) As implemented by California courts, "[t]he test is an objective one—whether such an impression is created in the eyes of the hypothetical reasonable person." (*Betz v. Pankow, supra*, 31 Cal.App.4th at p. 1508.) Thus, unless "a reasonable member of the public at large, aware of all the facts, would fairly entertain doubts concerning the [arbitrator's] impartiality . . . ," the arbitrator is not subject to disqualification. (*Flier v. Superior Court* (1994) 23 Cal.App.4th 165, 170 [28 Cal.Rptr.2d 383]; accord, *Guseinov v. Burns* (2006) 145 Cal.App.4th 944, 957 [51 Cal.Rptr.3d 903]; see also § 170.1, subd. (a)(6)(A)(iii) [requiring disqualification of a judge if "[a] person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial"].) Moreover, "[p]otential bias and prejudice must clearly be established by an objective standard. [Citation.] 'Courts must apply with restraint statutes authorizing disqualification of a judge due to bias.' " (*People v. Chatman* (2006) 38 Cal.4th 344, 363 [42 Cal.Rptr.3d 621, 133 P.3d 534] [construing § 170.1, subd. (a)(6)(A)(iii)].)

■ "A frequent cause for an impression of possible bias is the existence of a present or past business relationship between the arbitrator and a party, its counsel or a witness. [Citations.] Such a relationship suggests a pecuniary interest on the part of the arbitrator or that the arbitrator will place unusual trust or confidence in the party with whom the relationship existed, thus giving the arbitrator reason to favor the party for reasons wholly unrelated to the merits of the arbitration." (*Betz v. Pankow, supra*, 31 Cal.App.4th at pp. 1508–1509.) The business relationship, however, must be substantial. As Justice White cautioned in his concurring opinion in *Commonwealth*, "[An arbitrator] cannot be expected to provide the parties with his complete and unexpurgated business biography. But it is enough for present purposes to hold, as the Court does, that where the arbitrator has a substantial interest in a

---

[8] There is no question section 1286.2 governing vacatur of arbitration awards and section 1281.9 were intended to codify this standard. (See Stats. 2001, ch. 362, §§ 5 & 8 [2001 amendments to the grounds for vacatur were "declarative of existing case law"]; *International Alliance of Theatrical Stage Employees, etc. v. Laughon* (2004) 118 Cal.App.4th 1380, 1393 [14 Cal.Rptr.3d 341] [finding no fundamental difference between disqualification standard in § 1281.9, subd. (a), and impression-of-bias standard].)

firm which has done more than trivial business with a party, that fact must be disclosed. If arbitrators err on the side of disclosure, as they should, it will not be difficult for courts to identify those undisclosed relationships which are too insubstantial to warrant vacating the award." (*Commonwealth, supra,* 393 U.S. at pp. 151–152 (conc. opn. of White, J.); see also *Guseinov v. Burns, supra,* 145 Cal.App.4th at p. 959 [" 'ordinary and insubstantial business dealings' " arising from participation in the business or legal community do not necessarily require disclosure; rather, " 'significant & substantial business relationships' " must be disclosed]; *Casden Park La Brea Retail LLC v. Ross Dress for Less, Inc.* (2008) 162 Cal.App.4th 468, 478 [75 Cal.Rptr.3d 763] [lack of substantial business relationship between neutral arbitrator and party failed to give rise to duty to disclose].)

### 4. *The Disclosed Relationship Between McConihay and the Mahnkes' Counsel Does Not Warrant His Disqualification*

We independently determine whether the undisputed facts might cause a reasonable person to doubt Mr. McConihay's impartiality.[9]

At issue here is Mr. McConihay's disclosure that he had been retained by another client of the Mahnkes' counsel to testify as an expert witness on construction costs in a case that was then pending. In addition, as revealed by the resume attached to his disclosure statement, Mr. McConihay included the Mahnkes' counsel as one of 14 lawyers listed as references for his services. His resume further explains he has been involved in the construction and building industry for more than 30 years; he is a licensed, bonded and insured general contractor; he has been a lead witness for general contracting and scope and cost of repair in approximately 700 mediations; and he has participated in numerous arbitrations, testified in trial and been deposed more than 100 times. His resume lists 30 cases in which he participated as a lead expert or consultant, none of which involves the Mahnkes' counsel.

Based on these facts, would a reasonable member of the public fairly entertain a doubt as to Mr. McConihay's ability to serve impartially as the Mahnkes' party-selected appraiser? Mr. McConihay affirms he has no financial interest in the underlying dispute between the Mahnkes and CFPA. Yet

---

[9] The Supreme Court is currently reviewing a case presenting the issue whether a de novo or substantial evidence standard of review should apply to an order vacating an arbitration award based on an arbitrator's alleged bias. (See *Haworth v. Superior Court,* review granted Sept. 17, 2008, S165906.) In the context of this writ proceeding, which concerns a petition to disqualify an appraiser before commencement of the appraisal proceeding, we independently determine as a question of law whether grounds for disqualification exist. (See *Briggs v. Superior Court* (2001) 87 Cal.App.4th 312, 319 [104 Cal.Rptr.2d 445] [disqualification of judge under § 170.1]; accord, *Sincavage v. Superior Court* (1996) 42 Cal.App.4th 224, 230 [49 Cal.Rptr.2d 615]; *Flier v. Superior Court, supra,* 23 Cal.App.4th 165.)

we may reasonably presume he is being compensated by the other client, just as the Mahnkes are responsible for compensating him in their proceeding. (See Ins. Code, § 2071.) Thus, although compensation for services is often relevant to the question of ability to serve impartially, it is not determinative in this instance because any party-selected appraiser will necessarily be paid by the retaining party. (See, e.g., *Banwait v. Hernandez* (1988) 205 Cal.App.3d 823, 831 [252 Cal.Rptr. 647] ["[t]he existence of bias depends on whether one can draw an inference of favoritism not because the arbitrator may receive money but because the []arbitrator has a business-connected relationship that may lead him or her to place unusual trust or confidence in one side as opposed to the other"].) Thus, in *Gebers, supra*, 38 Cal.App.4th 1648 the court concluded vacation of an arbitration award was required because the appraiser selected by State Farm had failed to disclose he was also under retainer to State Farm as an expert witness in two other litigated matters. (*Id.* at p. 1652.) Unlike the client who has retained Mr. McConihay as an expert witness in another pending action, however, State Farm was a party in the appraisal proceeding and had a "substantial and continuing business relationship" with the appraiser. Likewise, in *Figi v. New Hampshire Ins. Co., supra*, 108 Cal.App.3d 772, the neutral umpire, an accountant, had failed to disclose he had been retained in five other cases by the appraiser selected by the insurer. Not surprisingly, the court concluded this was an ongoing business relationship that affected the neutral arbitrator's impartiality. (*Id.* at p. 777.) Another decision relied upon by CFPA, *Wheeler v. St. Joseph Hospital* (1976) 63 Cal.App.3d 345 [133 Cal.Rptr. 775], is equally inapposite. In *Wheeler* the court vacated an award because the sole physician member of a neutral medical malpractice arbitration panel had failed to disclose his concurrent engagement as an expert witness by defense counsel. (*Id.* at pp. 370–371.) In such a situation one could reasonably expect the physician to wield a disproportionate influence over the other members of the panel. In contrast, in *Michael, supra*, 88 Cal.App.4th 925, the court concluded the party-selected appraiser's incidental provision of services on several other occasions to the insurer did not require his disqualification. (*Id.* at p. 943.)

 As aptly expressed elsewhere, "[M]ost arbitrators are volunteers drawn from business and professional ranks, and are not full-time judicial officers with attendant public responsibilities. In order to attract and obtain the most capable among them, we cannot demand divestment of all interests or withdrawal from all activities prohibited to judicial officers." (*Betz v. Pankow* (1993) 16 Cal.App.4th 919, 925 [20 Cal.Rptr.2d 834].) While we disagree with the characterization of most arbitrators as "volunteers," we wholeheartedly agree with the sentiment: Imposing overly rigorous standards on party-selected appraisers in informal proceedings under Insurance Code section 2071 would be both shortsighted and naïve about the realities of modern litigation practices. Viewed as a whole, Mr. McConihay's resume

demonstrates that he possesses experience qualifying him to act as a "competent" appraiser and that his broad client base distinguishes him from those professionals who regularly perform services for particular clients (or attorneys) and become financially dependent on them. Viewed from the standpoint of a reasonable member of the public, we see nothing that warrants Mr. McConihay's disqualification.

## DISPOSITION

The petition is granted, and a peremptory writ of mandate shall issue directing respondent superior court to vacate its order of May 7, 2009 granting CFPA's petition to disqualify Mr. McConihay and to enter a new order denying the petition. Peter and Patricia Mahnke are to recover their costs in this writ proceeding.

Woods, J., and Jackson, J., concurred.