Filed 7/29/21  328 Maple Limited Partnership v. Cal. Capital Ins. Co. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| 328 MAPLE LIMITED PARTNERSHIP,<br><br>    Cross-complainant and Respondent.<br><br>v.<br><br>CALIFORNIA CAPITAL INSURANCE COMPANY,<br><br>    Cross-defendant and Appellant. | B308099<br><br>(Los Angeles County Super. Ct. No. BC611607) |

APPEAL from an order of the Superior Court of Los Angeles County, Gregory Keosian, Judge.  Reversed with directions.

GladstoneWeisberg, Gene A. Weisberg and Joseph P. Wohrle for Cross-defendant and Appellant.

Law Offices of Saul Reiss, Saul Reiss and Fay Pugh for Cross-complainant and Respondent.

Following an insurance appraisal proceeding held to determine the amount of loss sustained by water damage to an apartment building, the insured challenged confirmation of the appraisal award on the grounds that the insurer's appraiser did not disclose previous and concurrent work with the insurer. The trial court agreed with the insured and vacated the award.

Although the appraiser should have timely and fully disclosed his past and current work for the insurer, we cannot on this record conclude as a matter of law that a reasonable member of the public would fairly entertain doubts about his impartiality. Accordingly, we reverse, and direct the trial court to enter a new order confirming the award.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2014, the penthouse of an apartment building located at 328 North Maple Drive in Beverly Hills was flooded. The building was damaged, and the owner of the building, respondent 328 Maple Limited Partnership (Maple) filed a claim for the damage under its insurance policy (the Policy) written by appellant California Capital Insurance Company (CCIC).

Between September and December of 2015, the parties attempted to agree on the amount of loss sustained by the property. In December 2015, after failing to agree, CCIC commenced appraisal proceedings under the Policy's appraisal provision, governed by Insurance Code[1] section 2071, which provides as follows:

---

[1] Subsequent undesignated code citations are to the Insurance Code.

> "**E.   Property Loss Condition**
>
> "...
>
> "**2.   Appraisal**
>
> "If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss.  In this event, each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding. . . ."

On December 30, 2015, CCIC proposed to designate Gary Halpin as its "competent and disinterested" appraiser and provided Maple with his resume.  Halpin's resume indicated he possessed "more than forty years in the industry . . . extensive technical knowledge and hands on experience that enable[d] him to act as an expert witness, consultant and damage appraiser" whose "clients include plaintiffs, respondents, attorneys, developers, builders, industry professionals, homeowner associations, private parties and corporations."

In April 2016, Maple designated Matthew Blumkin as its "competent and disinterested" appraiser and provided CCIC with his resume.

After extensive disagreement and delay, the two appraisers eventually settled upon the Hon. Suzanne Bruguera (Ret.), as a "competent and disinterested umpire," following which appraisal proceedings commenced.

3

In February 2019, the parties completed the appraisal process.

On December 2, 2019, an "Appraisal of Insurance Claims Award Form" (the Award) was executed by Judge Bruguera and Halpin.

Disappointed by the Award, Maple's counsel began to research bases for opposition, eventually discovering that Halpin had failed to disclose he had been working as an appraiser for CCIC in another matter, *Lee v. California Capital Ins. Co.* (2015) 237 Cal.App.4th 1154 (*Lee*), at the very time he had been retained as its appraiser for the current dispute.

The parties then filed competing petitions to confirm and vacate the Award in superior court. In connection therewith, CCIC submitted a declaration from Halpin admitting not only that he was CCIC's appraiser in *Lee*, but also that he had previously been retained as an expert witness by CCIC in a second matter. Halpin's declaration went on to state: "I am not financially dependent on [CCIC]. The income that I have received from [CCIC] totals less than two percent of my income over the past five years. Since 2015, [CCIC] designated me twice as an appraiser, this case and [in *Lee*], and was designated as an expert in one case involving [CCIC]. During that time, I have been designated as an appraiser, umpire or litigation expert in approximately 80 matters. None of the others involved [CCIC]."

Maple's opposition argued that CCIC's failure to disclose Halpin's prior relationships with CCIC constituted " 'corruption' " for purposes of Code of Civil Procedure section 1286.2, and warranted vacatur.

CCIC responded that only neutral *umpires* in a section 2071 appraisal proceeding, and not *party-appointed appraisers*,

have an obligation to disclose under Code of Civil Procedure section 1281.9.

The trial court agreed with Maple, ruling that Halpin's two other retentions by CCIC constituted "an ongoing and substantial business relationship, requiring disclosure below and vacatur presently." (See *Mahnke v. Superior Court* (2009) 180 Cal.App.4th 565, 580 (*Mahnke*).) It granted Maple's motion to vacate under Code of Civil Procedure section 1286.2, subdivision (a)(4) and (6).

CCIC timely appealed.

## DISCUSSION

### A.    Standard of Review

We review a trial court order vacating an arbitration award, as well as its determination of whether there are grounds to disqualify an appraiser, de novo. (*SWAB Financial, LLC v. E\*Trade Securities, LLC* (2007) 150 Cal.App.4th 1181, 1196; see *Mahnke*, *supra*, 180 Cal.App.4th at p. 580, fn. 9.)

### B.    Law Governing Appraisal Awards

All fire insurance policies issued in California must be on a standard form that includes the appraisal provision set forth in section 2071. (§§ 2070, 2071.) Property insurance policies written to protect against other perils may opt-in to the provisions found at section 2071 by using it as a standard form, as did the Policy in this case.

When the parties to a section 2071 residential insurance policy disagree on the amount of loss, they are required to participate in an informal appraisal proceeding. Each side proposes a "disinterested and neutral" appraiser, following which the appraisers attempt to jointly agree on an umpire, i.e.,

5

someone who resolves the appraisers' disagreement by considering the evidence and selecting the appropriate appraisal award. (§§ 2070, 2071.)

In addition to judicial review of the award itself, the parties can ask the superior court to review the selection of the other party's appraiser, or to appoint an umpire when the parties fail to reach agreement on that issue. (§§ 2070, 2071.)

Although informal, appraisal proceedings are subject to the statutory contractual arbitration law. The exclusive grounds for vacating an appraisal award are set forth in Code of Civil Procedure section 1286.2, subdivision (a). (See *Maaso v. Signer* (2012) 203 Cal.App.4th 362, 371.) As relevant here, an appraisal award may be vacated on the basis that "[t]he award was procured by corruption, fraud or other undue means." (Code Civ. Proc., § 1286.2, subd. (a)(1).)

The appraisal process under section 2071 differs from traditional arbitration in several important respects, as discussed by our colleagues in Division Seven writing in *Mahnke*. Most importantly for our purposes, the statutory conflict-of-interest disclosure requirements as amended by the Legislature in 2001 were held by the court in *Mahnke* to apply only to the *umpire* and not to the party-selected *appraisers*. (See *Mahnke, supra*, 180 Cal.App.4th at p. 577 ["The disclosure requirements in [Code Civ. Proc., §] 1281.9 and the Judicial Council's ethics standards for neutral arbitrators do not apply to any arbitrator other than the jointly selected, or court-appointed, proposed neutral arbitrator—

6

or, in the case of a contested [insurance] appraisal proceeding, the competent and disinterested umpire"].)**2**

While declining "to recognize an automatic and unlimited right of disqualification for disclosures made by those appraisers" (*Mahnke, supra,* 180 Cal.App.4th at p. 578, fn. omitted), the *Mahnke* court concluded that appraisers may be disqualified (and any subsequent award vacated) by virtue of not being "disinterested" if they fail to disclose "substantial" "business relationships" with "the [umpire] and a party, its counsel or a witness." (*Id.* at p. 579.) It is this pivotal question to which we now turn.

## C. The Appraiser's Tardy Disclosures Do Not, on This Record, Warrant Vacation of the Award

The *Mahnke* court explained that "substantial" "business relationship[s]" can create " 'an impression of possible bias' " because " '[s]uch a relationship suggests a pecuniary interest on the part of the [appraiser] or that the [appraiser] will place unusual trust or confidence in the party with whom the relationship existed, thus giving the [appraiser] reason to favor the party for reasons wholly unrelated to the merits of the [appraisal].' [Citation.]" (*Mahnke, supra,* 180 Cal.App.4th at p. 579.)

---

**2** In contradistinction to an appraiser, the umpire in an appraisal proceeding must disclose six specific sorts of relationships, any ground for disqualification under Code of Civil Procedure section 170.1, and other matters that could cause a reasonable person to entertain a doubt about her impartiality. (Code Civ. Proc., § 1281.9, subd. (a).)

7

In *Mahnke*, the insurer's appraiser disclosed that he had been retained by the insurer's counsel to testify as an expert witness on one case that was then pending. (See *Mahnke, supra*, 180 Cal.App.4th at p. 571.) In order to determine whether this concurrent work should have disqualified the party appraiser as "interested" for purposes of disqualification under section 2071, the *Mahnke* court examined *Gebers v. State Farm General Ins. Co.* (1995) 38 Cal.App.4th 1648, 1652-1654 (*Gebers*) and *Figi v. New Hampshire Ins. Co.* (1980) 108 Cal.App.3d 772, 777 (*Figi*). (*Mahnke, supra*, at pp. 575, 581.)

In *Gebers*, the trial court vacated an appraisal award because the appraiser appointed by the insurer failed to disclose that he "was currently retained by [the insurer] as an expert witness in two pending court actions." (*Gebers, supra*, 38 Cal.App.4th at p. 1652.) The Court of Appeal affirmed because this failure to disclose "casts considerable doubt on the appraiser's ability to act impartially." (*Ibid.*)

In *Figi*, the Court of Appeal reversed an appraisal award where the umpire was concurrently engaged by the insured's counsel. Although the record did not indicate how significant that business relationship was, or whether it involved the same client, the umpire nevertheless could not be considered " 'disinterested,' " "when he has done business with the insurance company's appraiser during the pendency of an appraisal involving that company." (*Figi, supra*, 108 Cal.App.3d at p. 777.)

While the appellants in *Figi* also challenged the neutrality of the insured's party-*appraiser*, pointing out that he handled a " 'good share' " of the umpire's business, the Court of Appeal disagreed this rendered the appraiser " 'interested' " as a matter

8

of law so as to justify vacating the award. (*Figi, supra*, 108 Cal.App.3d at pp. 775, 778.)

In holding that the disclosed relationship between the appraiser and the insured's counsel was *not* so "substantial" as to render the appraiser "interested" as a matter of law, the *Mahnke* court distinguished *Gebers* by observing that the appraiser in *Gebers* had been concurrently engaged in *two* litigated matters, both involving the same insurer, whereas the appraiser challenged in *Mahnke* had been retained by the same counsel to testify as an expert in only one other pending case. (See *Mahnke, supra*, 180 Cal.App.4th at pp. 580-581.) The *Mahnke* court distinguished *Figi* on the basis that the challenged business relationships involved the *umpire's* multiple relationships with the insured's appraiser. (*Id.* at p. 581.)

The trial court in this case was rightfully concerned about Halpin's failure to disclose his CCIC relationships until after the appraisal was completed. Justice White's concurring opinion in *Commonwealth Coatings Corp. v. Continental Casualty Co.* (1968) 393 U.S. 145 points out the obvious. " 'If [appraisers and their clients] err on the side of disclosure, as they should, it will not be difficult for courts to identify those undisclosed relationships which are too insubstantial to warrant vacating the award.' " (*Mahnke, supra*, 180 Cal.App.4th at p. 580, quoting *Commonwealth, supra*, at p. 152 (conc. opn. of White, J.).)

The theme of full and early disclosure was echoed in *Gebers*. "An additional infirmity of equal magnitude . . . is that the appraiser's current dealings with [the insurer] were not disclosed to plaintiffs. This omission is equally lethal to the award." (*Gebers, supra*, 38 Cal.App.4th at p. 1653, fn. omitted, citing *Kaiser Foundation Hospitals, Inc. v. Superior Court* (1993)

9

19 Cal.App.4th 513, 517 and *Betz v. Pankow* (1993) 16 Cal.App.4th 931, 936.)

Further, insurance companies cannot sit idly on the sidelines. They have an independent duty of good faith and fair dealing towards their insureds, which includes conduct during an appraisal procedure. (See *Figi, supra*, 108 Cal.App.3d at pp. 776-777). Ensuring that their chosen appraiser fully discloses all past and present business relationships with the counsel or parties who nominate them is part and parcel of the duty of good faith and fair dealing. (*Ibid.*)

On the other hand, we are mindful that the doctrine of appraiser disclosure set forth in *Mahnke* leaves room for interpretation. While appraisers in section 2071 proceedings are styled as "competent" "disinterested" and "impartial," it goes without saying that both parties are likely to nominate appraisers who look at least somewhat favorably on their respective positions. Umpires are surely aware of this point.

Further, Halpin's declaration states that he is not financially dependent on CCIC, that his CCIC income has totaled less than 2 percent of his income over the past five years, that he has been designated as an appraiser umpire or litigation expert in approximately 80 matters, and that none of these other matters have involved CCIC. These statements parallel the appraiser declaration that assuaged the *Mahnke* court by "demonstrate[ing] that he possesses experience qualifying him to act as a 'competent' appraiser and . . . his broad client base distinguishes him from those professionals who regularly perform services for particular clients (or attorneys) and become financially dependent on them." (*Mahnke, supra*, 180 Cal.App.4th at p. 582.)

10

We also note that Maple took a less-than-aggressive position over Halpin's disclosure obligations until after the umpire (an experienced, retired superior court judge), issued the Award. Maple could have demanded a more specific disclosure from CCIC up front, conducted its own investigation of Halpin's relationships with that company, or challenged Halpin's selection beforehand through a petition to the trial court rather than waiting until it came out on the losing end. This has the ring of "sour grapes."

Moreover, instead of leaving Halpin's belated declaration unchallenged in the trial court, Maple could have sought discovery regarding Halpin's work for CCIC in relation to his other engagements and other facts regarding appraiser bias. (See *Rebmann v. Rohde* (2011) 196 Cal.App.4th 1283, 1293-1294 [discussing deposition subpoena and joinder of arbitrator].) Instead, Maple asks us to speculate as to how much Halpin was truly dependent on CCIC's business, and also whether Judge Bruguera might have viewed Halpin's appraisal differently had she known about the ongoing and past relationships between Halpin and CCIC. Speculation cannot support reversing an arbitral award.

This case falls within the gray area between *Mahnke* and *Gebers*. On the record before us, we cannot say that Halpin's two additional engagements with CCIC are "substantial" under *Mahnke* as a matter of law. (See *Mahnke, supra,* 180 Cal.App.4th at p. 579.)

11

## DISPOSITION

The superior court's order vacating the Award is reversed. The superior court is ordered to enter a new order confirming the Award. The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED

CRANDALL, J.*

We concur:

CHANEY, J.

BENDIX, Acting P. J.

---

*Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.